**Case No. 22-60050** (consolidated with No. 22-60053)

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

In re:

MONTE L. MASINGALE; ROSANA D. MASINGALE

Debtors.

---------------------------------

JOHN D. MUNDING, Chapter 7 Trustee;
STATE OF WASHINGTON

Appellants,

vs.

ROSANA D. MASINGALE,

Appellee.

---

APPEAL FROM UNITED STATES BANKRUPTCY
APPELLATE PANEL FOR THE NINTH CIRCUIT

BAP No. EW-22-1016-FLB

---

APPELLEE'S RESPONSE BRIEF

---

DARREN M. DIGIACINTO, WSBA #39771
Winston & Cashatt, Lawyers
601 W. Riverside Avenue, Suite 1900
Spokane, WA 99201
Telephone: 509-838-6131
dmd@winstoncashatt.com
Attorneys for Appellee

# TABLE OF CONTENTS

Page

I.   Introduction .......................................................................... 1

II.  Jurisdiction .......................................................................... 2

III. Issues Presented .................................................................. 2

IV.  Statement of the Case ......................................................... 3

V.   Response Argument .............................................................. 8

    A.   Neither the Chapter 7 Trustee nor the State of Washington should be permitted to argue this matter or contest Masingale's exemption ...................................................... 8

    B.   The question on appeal here is resolved by application of the plain language of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Supreme Court authority ................. 11

    C.   The trial court erred in determining that "100% of FMV" means something other than "100% of FMV." ................................ 12

    D.   Response to Chapter 7 Trustee's Arguments ................................... 17

        1.   The B.A.P. decision applied binding Supreme Court authority and did not create any new exemption ..................... 17

        2.   The authorities cited by the Chapter 7 Trustee are not determinative of what happens to post-petition appreciation in this circumstance ............................................. 21

        3.   The Chapter 7 Trustee's argument that there was no requirement to object is incorrect ............................................. 24

    E.   Additional arguments posed by the State of Washington ................. 26

1.     This Court should ignore the efforts of the State of Washington to disparage Masingale and to paint this Court's opinion in an effort to convince this Court to reverse the B.A.P. ..................................................................... 26

2.     This appeal is not about a breach of contract; it is about the effect of a claimed exemption based on Supreme Court authority ............................................. 27

3.     Masingale's exemption claim was not ambiguous, nor was it based on any gimmick ............................................. 29

4.     Applicability of Snapshot Rule ................................................. 31

IV.     Conclusion ........................................................................... 36

Statement of Related Cases .......................................................... 38

Unpublished Case: In re Ayobami,
    15-35488, 2016 WL 3854052, at *9
    (Bankr. S.D. Tex. June 9, 2016) ........................................... 34, 35

Certificate of Compliance ........................................................... 39

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

Gebhart v. Gaughan (In re Gebhart),
    621 F.3d 1206 (9th Cir. 2010) ............................................................Passim

In matter of Ayobami,
    879 F.3d 152 (5th Cir. 2018) ........................................................ 34

In re Ayobami,
    15-35488, 2016 WL 3854052, at *9
    (Bankr. S.D. Tex. June 9, 2016) ........................................... 34, 35

In re Messer,
    Nos. AZ-11-1505-JuPaD 11-03007, 2012 WL 762828
    (9th Cir. B.A.P. March 9, 2012) .................................................. 14

In re Mwangi,
    764 F.3d 1168 (9th Cir. 2014) ....................................................... 33

In re Smith,
    235 F.3d 472 (9th Cir. 2000) ......................................... 9, 10, 16, 32

In re Stoney,
    445 B.R. 543 (E.D. VA) (2011).................................................... 14

In re Winchell,
    No. 10-05827-PCW13, 2010 WL 5338054
    (Bankr. E.D. Wash. Dec. 20, 2010) ........................................... 14

In re Wolfberg,
    255 B.R. 879 (B.A.P. 9th Cir. 2000),
    aff'd, 37 F. App'x 891 (9th Cir. 2022) ................................... 28, 29

Klein v. Chappell (In re Chappell),
    373 B.R. 73 (B.A.P. 9th Cir. 2007)....................................... 13, 17

Laub v. United States Dept. of Interior,
    342 F.2d 1080, fn. 8 (9th Cir. 2003) ........................................... 30

Managed Pharmacy Care v. Sebelius,
    716 F.3d 1235, (9th Cir. 2013) ........................................................ 30

McCalla v. Royal MacCabees Life Ins. Co.,
    369 F.3d 1128, (9th Cir. 2004) ....................................................... 31

Owen v. Owen,
    500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)................. 11, 15, 32

Schwab v. Reilly,
    560 U.S. 770, 130 S. Ct. 2652,
    177 L. Ed.2d 234 (2010)....................................................................Passim

Taylor v. Freeland & Kronz,
    503 U.S. 638, 112 S. Ct. 1644,
    118 L. Ed.2d 280 (1992)....................................................................Passim

Wilson v. Rigby,
    909 F.3d 306 (9th Cir. 2018) ............................................... 17, 20, 32, 35, 36

**Statutes and Rules**

11 U.S.C. § 522(c)     ....................................................... 12, 23, 31, 34

11 U.S.C. § 522(d)(1)     .......................................................5, 12, 16, 33

11 U.S.C. § 522(l)     ............................................9, 14, 16, 19, 24, 28

11 U.S.C. § 541     .............................................................. 1

28 U.S.C. § 1334     .............................................................. 2

28 U.S.C. § 158(a)     .............................................................. 2

28 U.S.C. § 158(b)     .............................................................. 2

28 U.S.C. § 158(d)(1)     .............................................................. 2

Fed. R. Bankr. P. 1019(2)(B)(i) ....................................................2, 5, 6, 10, 12, 26

Fed. R. Bankr. P. 4003(b) ...........................................................................5, 19, 24

RCW 6.13.010        ............................................................................6

# I.    INTRODUCTION.

This Court should affirm the decision of the Bankruptcy Appellate Panel (hereafter "B.A.P."), which correctly determined that the trial court erred when it, without any authority to do so, changed Rosana Masingale's (hereafter "Masingale") already-fixed homestead exemption claim of "100% of FMV" to a dollar-specific and statutorily permissible amount instead of leaving it as it was claimed by Masingale in her Chapter 11 Petition back in 2015.  This Court should also decline to hear the arguments of Appellants herein as, in the case of the State of Washington, it has waived its right to do so, and in the case of the Chapter 7 Trustee, no new objection period was opened following the conversion of the Chapter 11 case to a Chapter 7 case pursuant to explicit bankruptcy rules.  In the event that this Court does hear Appellants' arguments, this Court should substantively reject such arguments, just as the B.A.P. properly rejected them.

Established Supreme Court authority outlines the result of Masingale's exemption claim of one hundred percent (100%) of fair market value of her residence, to which no objection was timely filed, was to withdraw the residence from the estate and thus, to place it outside the reach of the trustee for distribution to unsecured creditors. In other words, the exempted residence revested in Masingale and was no longer property of the estate pursuant to 11 U.S.C. § 541  There is simply no legal basis that would allow the State of Washington or the Chapter 7 Trustee to

claw back exempt property into the estate where the asset itself was exempted at "100% of FMV" without any specific dollar amount listed.

This Court should reject the arguments made by the Chapter 7 Trustee and the State of Washington here, just as the B.A.P. properly rejected them. And this Court should affirm the B.A.P. decision that the trial court erred when it, without authority authorizing it to do so, changed the already-fixed exemption claimed by Masingale of "100% of FMV," which did not designate a specific dollar amount, to $45,950.00, the statutory limit, absent any timely objection.

## II.    JURISDICTION.

The Ninth Circuit Court of Appeals has jurisdiction over this appeal from the bankruptcy court's final Order pursuant to 28 U.S.C. § 1334; § 158(a) and (b); and § 158(d)(1). Masingale is responding to the Appellants' appeal of the final Order of the B.A.P. for the Ninth Circuit, which partially reversed the trial court's Order in the United States Bankruptcy Court for the Eastern District of Washington.

## III.    ISSUES PRESENTED.

(1)    Whether this Court should hear arguments from the Appellants in this matter when (a) the State of Washington, an interested party to the Chapter 11 case here, failed to timely object to Masingale's exemption claim for the residence; and (b) when Fed. R. Bankr. P. 1019(2)(B)(i) provides that no new objection period related to exemptions is set in the event that a Chapter 11 case in which a confirmed

plan has been in place for over one year is converted to a Chapter 7 case, as happened here. ANSWER: No.

(2)     Whether a residence is removed from the estate to revest in the Debtor when the Debtor claims an exemption in the residence of "100% of FMV" and no party timely objects. ANSWER: Yes.

(3)     Whether, following the fixed exemption of the residence, the estate can realize on any benefit from the residence, including post-petition appreciation. ANSWER: No.

## IV.     STATEMENT OF THE CASE.

This Court should affirm the decision of the B.A.P., which determined that the Debtor's claim for a homestead exemption of "100% of FMV," without any specific dollar amount included removes the residence from the estate when no interested party timely objects.

### UNDISPUTED FACTS

1.     Masingale purchased the residence, commonly known as 19716 E. 8th Avenue, Greenacres, Washington (hereafter "Debtor's Home") by deed recorded October 11, 1999. (2-StateER-168)  Debtor Monte Masingale resided in the Debtor's Home with Debtor Rosana Masingale until the date of his death on July 7, 2016. (2-StateER-168)  Debtor Rosana Masingale and her daughter continued to reside in the Debtor's Home following the death of her husband, until the Chapter 7

Trustee sold the property in April 2022 for $422,000.00, for which there were net proceeds of $222,783.34.  (See MundER-30-33)

2.      Masingale filed a Chapter 11 case in the Bankruptcy Court for the Eastern District of Washington on September 28, 2015. (4-StateER-684-739) Masingale filed Schedules, including a list of claimed exemptions, along with the Petition.  (4-StateER-722)  In 2015, Masingale listed Debtor's Home with a value of $165,430.00, with debt secured against Debtor's Home in the amount of $130,724.00. Masingale had equity in the residence within the statutorily permissible amounts on the day of filing the Chapter 11.  But pursuant to Supreme Court precedent, she claimed an exemption in the residence of "100% of FMV" under a federal exemption statute that would have removed only a fixed interest in the property equal to the specific dollar amount claimed as exempt if Masingale had identified, for example, the specific dollar amount of available equity for the exemption that was within the statutory limits.  But that is not what is listed in the box for "Value of Claimed Exemption."  Specifically, Schedule C – PROPERTY CLAIMED AS EXEMPT stated:

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| Debtor's Home 19716 E. 8th Avenue Greenacres, WA 99016 Legally described on Exhibit "4" attached | 11 USC § 522(d)(1) | 100% of FMV | $165,430.00 |

(4-StateER-722)

3.　　Debtors participated in the rescheduled initial Meeting of Creditors on November 25, 2015, which was concluded upon completion.  (4-StateER-683)  The deadline for objections to Masingale's claimed exemptions pursuant to Fed. R. Bankr. P. 4003(b) was December 27, 2015, 30 days following the Meeting of Creditors.  Neither of the Appellants hereto filed a timely objection to Masingale's exemption of 100% of FMV for the homestead exemption on the residence in the Chapter 11 case.  (See Fed R. Bankr. P. 1019(2)(B)(i) regarding the Chapter 7 Trustee not objecting; and See Opening Brief of Appellant State of Washington, pp. 36-38.)

4.　　Following the death of her husband, combined with the inability to continue funding the confirmed plan, the case was converted to a Chapter 7 on November 19, 2018, at which time John Munding was appointed as Chapter 7 Trustee.  (MundingER-80) Following the conversion, a new Meeting of Creditors

was set for December 2018, when it was held and concluded. (MundingER-62; MundingER-98)

5.     It is undisputed that no new objection period was set for exemptions pursuant to Fed. R. Bankr. P. 1019(2)(B)(i), as this case converted to a Chapter 7 more than a year after plan confirmation in the Chapter 11 case.

6.     On September 1, 2021, Masingale filed a Motion to Sell Real Estate (Debtor's Home), Disburse Proceeds of Sale, and Shorten Time Period to Object, asking the Court to approve a sale of Debtor's Home and, *inter alia,* asking the Court to order that the net proceeds of the sale would be fully exempt, pursuant to RCW 6.13.010. (2-StateER-188-190; MundER-58-60). After withdrawing that Motion, Masingale asked the Court to direct the Chapter 7 Trustee to abandon the Debtor's Home, based on the authority in Schwab v. Reilly, 560 U.S. 770, 130 S. Ct. 2652, 177 L. Ed.2d 234 (2010) (distinguishing the Schwab circumstances and determination from that in Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S. Ct. 1644, 118 L. Ed.2d 280, 26 C.B.C.2d 487 (1992)), whereby an exemption claim of "100% of FMV" placed all interested parties on notice of a need to object, but no parties did so. (MundingER–57; 2-StateER-168-173)

7.     The Chapter 7 Trustee objected to the Motion to Abandon, which the State of Washington joined[1], and subsequently filed a Motion and Notice for Order Authorizing Sale of Real Property Free and Clear of Liens, in which the Chapter 7 Trustee proposed a specific sale and asked the Court to approve the same.  (2-StateER-124-134; 135-142; 143-155)

8.     Masingale objected to the Chapter 7 Trustee's Motion to Authorize the Sale of the residence, incorporating Masingale's arguments from the Memorandum of Points and Authorities in Support of Motion to Compel Abandonment of Debtor's Home (2-StateER-168-173) that there was nothing upon which the estate could realize for the benefit of unsecured creditors, as Masingale had exempted all of it back in 2015.  (MasingaleER-3)

9.     The trial court decided both matters on the pleadings, without a hearing, and subsequently entered the consolidated Order on appeal in this matter.  (2-StateER-88-95)

10.    The Court considered the consolidated Motions under the following framework: (1) Did the absence of an objection to Masingale's exemptions preclude the Chapter 7 Trustee's argument; (2) What dollar value had Masingale actually

---

[1] The State of Washington joined in the Trustee's objection and added additional theories in support of its objection.  (2-StateER-135-142)  The Court's Order does not address the additional arguments at any point and made no rulings regarding the same, but the Court does note the State of Washington's agreement with the Trustee's position and support of the Motion to Sell the Property. (2-StateER-91)

claimed under the homestead exemption statute; and (3) Which party should receive the benefit of the home appreciation from 2015 until present.  (2-StateER-92-94)

11.     The trial court ultimately denied Masingale's Motion to Compel the Trustee to Abandon Debtor's Home; granted the Trustee's Motion to Sell Debtor's Home; and set Masingale's maximum allowed homestead exemption claim at $45,950.00.  (2StateER-94-95)

12.     Masingale timely appealed the ruling to the B.A.P., which heard the case and issued a published opinion on November 2, 2022 in B.A.P. No. EW-22-1016-FLB.  (1-StateER-4-28)

13.     Following the B.A.P. decision, the Chapter 7 Trustee and the State of Washington filed the instant appeal.

14.     The trial court entered an Order directing the Chapter 7 Trustee to hold all remaining home sale proceeds pending the outcome of this appeal in its docket entry at Docket No. 575.  (2-StateER-76)

## V.    RESPONSE ARGUMENT.

### A.    Neither the Chapter 7 Trustee nor the State of Washington should be permitted to argue this matter or contest Masingale's exemption.

Well-established Supreme Court authority provides that the failure of a party to timely object to a claim of exemption that, on its face, fails to identify the specific dollar amount claimed or otherwise exceeds permissible amounts, such as a claim of

"100% of FMV" or "$ Unknown," within the allotted timeframe of 30 days after the conclusion of the meeting of creditors, prevents the interested party from subsequently objecting to or challenging the exemption, whether or not such an exemption falls outside of the statutory limits.

Here, the State of Washington was a party to the Chapter 11 case and elected not to object. The State of Washington should not now be heard to argue the validity of the already-established exemption, as it has waived any such right to do so. Pursuant to 11 U.S.C. § 522(l), in the absence of an objection by a party in interest, the "property claimed as exempt on such list is exempt." Taylor outlines how even those claims of exemption that, on their face, fall outside of the statutorily permitted amounts are final in the absence of any such objection. See Schwab, 560 U.S. at 789-90. As further support, the Ninth Circuit has already addressed this concept directly in In re Smith, 235 F.3d 472 (9th Cir. 2000), where a debtor in a Chapter 11 case claimed an exemption in what the debtor described as a private retirement account that consisted of several pieces of real property into a limited partnership for the purpose of using the property for retirement. Id. at 473-74. That case involved two issues that are relevant to this case: (1) no parties objected to the exemption during the 30 days following the conclusion of the creditors' meeting (the issue was whether a trustee could hold the meeting open indefinitely without establishing a follow up meeting date); and (2) did the conversion to a Chapter 7

case open a new objection period. The trial court in that case had ruled that objections filed eight (8) months after the last creditors' meeting were timely and subsequently, that the Chapter 7 case set new objection periods. On appeal, this Court stated that "we may not reach the merits of the claimed exemptions absent a finding that the Creditors objections were timely made." Id. at 475. The Court then reiterated the Taylor language that failure to object prevents the creditor from challenging the validity of the exemption later, "whether or not [the debtor] had a colorable statutory basis for claiming it." Id. (quoting Taylor, 503 U.S. at 644) Based on these binding authorities, the State of Washington should not be permitted to now seek to change what Masingale elected many years ago.

The Chapter 7 Trustee is also prohibited from objecting to the already-established exemption based on a different reason, which was outside of his control. Specifically, by enacting Fed. R. Bankr. P. 1019(2)(B)(i), the Supreme Court elected not to reopen objection periods for exemptions following a conversion from a Chapter 11 case to a Chapter 7 case if the Chapter 11 plan had been confirmed for more than one year prior to conversion. That is the situation here, thus eliminating any rights of the Chapter 7 Trustee to make the arguments he now places before this Court. Based on the cited authorities, neither of the Appellants here has any legal right upon which to present their arguments and accordingly, they should be

prohibited from doing so with this Court and the B.A.P. opinion should be affirmed in its entirety.

**B.** **The question on appeal here is resolved by application of the plain language of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Supreme Court authority.**

The question before this Court is whether the trial court erred when it decided that Masingale's claimed exemption from 2015 of "100% of FMV" meant something other than 100 percent of fair market value of the residence when no trustee and no party in interest timely objected to the same. According to established bankruptcy rules and the United States Supreme Court, the answer is yes. As recognized by the B.A.P., the trial court erred and acted outside its authority, thus requiring reversal. The trial court also erred in failing to recognize existing Supreme Court authority providing that the effect of an exemption, unless objected to by a trustee or party in interest, is self-executing and serves to remove the property from the bankruptcy estate, revesting it in the debtor. See <u>Owen v. Owen</u>, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

In the event this Court does not find that the Appellants herein are precluded from now challenging the exemption that became final in 2015, it is important to note what this case is not about. This is not a breach of contract case, and it is not a case about the fairness of the bankruptcy rules and Bankruptcy Code. It is a case about the impact of an exemption claim in the absence of any timely objection.

**C.    The trial court erred in determining that "100% of FMV" means something other than "100% of FMV."**

The trial court erred when it elected to change Masingale's exemption to make it fit within the existing, permissible statutory scheme for homestead claims under 11 U.S.C. § 522(d)(1).  The result of the trial court's decision was to take away the majority of what Masingale had timely claimed as exempt in 2015, despite the fact that no timely objection was ever made by any interested party, in direct violation of the authority found in Taylor.

The trial court also erred by considering the Chapter 7 Trustee's arguments and the State of Washington's joinder when it determined the consolidated Motions, as neither party had any right to challenge the exemption for the reasons stated above.  By so doing, the trial court ignored Fed. R. Bankr. P. 1019(2)(B)(i)'s clear directive that no new objection period was opened following the conversion to Chapter 7, along with language in Taylor and Schwab that clarifies once a trustee or interested party has failed to object, they will not be heard to do so at some subsequent date.  The effect of this error by the trial court was also to make exempted property subject to debts that arose prior to the filing of the case, in violation of 11 U.S.C. § 522(c).

As recognized by the B.A.P., the trial court, in a section of its Order titled "What dollar amount did the Masingales claim as exempt in 2015," included a

footnote briefly identifying <u>Schwab v. Reilly</u>, 560 U.S. 770, 130 S. Ct. 2652, 177 L. Ed.2d 234 (2010).

2-StateER-93)  However, rather than directly addressing the finality of Masingale's claimed exemption once the objection period ran in 2015, the trial court gave the matter short shrift by calling the language in <u>Schwab</u> mere dicta that has prompted debtors like Masingale to attempt to maximize the value of their exemptions by using the phrase "100% of FMV" in their schedules.  The trial court's Order further notes that many of those attempts were rejected by courts that concluded "100% of FMV" does not necessarily prevent trustees from liquidating assets for the benefit of the bankruptcy estate."  The trial court included a string cite of cases in support of its decision.  (2-StateER-93, fn. 6)

 As argued to the B.A.P., it is apparent that the trial court was focused more on whether it could order the sale of the property[2] or whether abandonment of the

---

[2] The main portion of the trial court's Order deals with analysis from <u>Gebhart v. Gaughan</u> (<u>In re Gebhart</u>), 621 F.3d 1206 (9th Cir. 2010).  (2-StateER-92-93)  That analysis, however, is not dispositive or applicable in this situation.  As the B.A.P. correctly noted, <u>In re Gebhart</u> dealt with the "uncontroversial proposition that a debtor claiming a dollar-figure exemption within the statutory limits is not entitled to recover anything more than the claimed amount."  (1-StateER-24)  In the Ninth Circuit's Gebhart decision, which was a consolidated appeal of <u>In re Chappell</u>, 373 B.R. 73, 83 (9th Cir. BAP 2007) and <u>In re Gebhart</u>, an Arizona bankruptcy case affirmed by the District Court, both of the debtors in question listed dollar amounts that fell within the statutorily-identified amounts in the respective State and Federal exemption statutes.  The Ninth Circuit case focused on whether the failure to object removed the respective residences from the estates and then, to whom the appreciation in value of the residences should belong.  This Court in <u>In re Gebhart</u>

property was appropriate because it was not beneficial to the Estate, the two Motions currently before it, as opposed to paying specific attention to the actual claim of exemption on Masingale's Schedule C, which again, had never been challenged, as is evident based on the focus of the cases cited in the trial court's footnote[3]. In fact, not one case cited by the trial court in the string citation involved an untimely objection, lack of any objection by a trustee or interested party, or substantive change to a claimed exemption once the objection period had run.

Pursuant to 11 U.S.C. § 522(l), in the absence of an objection by a party in interest, the "property claimed as exempt on such list is exempt." Taylor addresses how even claims of exemption outside of statutory limits are final and permitted in the absence of any objection. Citing back to 11 U.S.C. § 522(l), the Taylor court reiterated that debtors are required to submit a list of exemptions and "[u]nless a

_____

noted that each of the exemptions permitted in the two respective matters permitted exemption of specific dollar amounts, not of the entirety of the property itself. In contrast, Masingale followed the reasoning in Taylor and Schwab to indicate that it was the entirety of the property that the debtor was claiming as exempt. If, for example, Masingale would have listed a dollar-specific amount instead of 100% of FMV, In re Gebhart may have been applicable, but it simply was not in this case.

[3] Other cases cited are equally distinguishable. For example, in In re Messer, Nos. AZ-11-1505-JuPaD 11-03007, 2012 WL 762828 (9th Cir. B.A.P. March 9, 2012), the court considered a claim to exempt the fair market value of a vehicle, a non-colorable claim under state law, when the trustee timely objected. In re Stoney, 445 B.R. 543 (E.D. VA) (2011), addresses that a claim of 100% of FMV is not automatically valid or unobjectionable, but in this case, there were no objections; In re Winchell, No. 10-05827-PCW13, 2010 WL 5338054 (Bankr. E.D. Wash. Dec. 20, 2010), the court considered a timely objection by the trustee, again distinguishing it from the facts of this case.

party in interest objects, the property claimed as exempt on such list is exempt." Id. at 643. The Taylor court further addressed that this same requirement of an objection applies when a claim can be identified as outside of the statutorily permissible amount on its face. See Schwab, 560 U.S. at 789-90 (distinguishing Taylor). The Schwab court, in determining that the exemption claim in that matter identified specific dollar amounts that were, on their face, within the permissible code limits, distinguished its decision from that in Taylor, holding that Taylor:

> applies the straightforward proposition that an interested party must object to a claimed exemption if the amount the debtor lists as the "value claimed exempt" is not within statutory limits, a test the value ($ unknown) in Taylor failed, and the values ($8,868 and $1,850) in [Schwab] pass.

Schwab, 560 U.S. at 790.

The trial court's evaluation here should have mirrored this approach, i.e., did the entry on Schedule C under the section titled "Value of Claimed Exemption" contain a value claimed exempt outside the statutory limits, which Masingale's claim did, thus putting the interested parties on notice back in 2015 that they needed to object if they intended to preserve any of the property for the benefit of the estate and creditors. Without a timely objection to this exemption claim by an interested party, there was no lawful basis for the trial court to change Masingale's already-fixed exemption claim. This is consistent with Supreme Court authority in Owen v. Owen, 500 U.S. at 308, a case involving a judicial lien encumbering property, which

provides that when property becomes exempt, as it did here, it is withdrawn from the estate for the benefit of the debtor. It is also consistent with the established impact of failing to object, as discussed above, based on the authority of In re Smith.

Nevertheless, the trial court elected to limit the already-fixed exemption to a dollar-specific amount under the federal exemptions, despite the fact that it is beyond question that Masingale claimed "100% of FMV," and not "100% of available equity," "100% of exemptible statutory amount," or some other specific dollar amount that might otherwise allow the trial court to reach such a conclusion. Basically, the trial court determined the amount of the exemption as if a timely objection had been made and then jumped straight to the homestead statute then in effect, 11 U.S.C. § 522(d)(1), which in 2015 allowed a homestead exemption amount "not to exceed $22,975" for each debtor, totaling $45,950 for both debtors, holding that Masingale's exemption claim of "100% of FMV" was actually a claim for at most $45,950. (2-StateER-93-94) This is not permitted by Taylor, In re Smith, or 11 U.S.C. § 522(l), which clearly indicate that once the objection period has run, no challenge to the validity of the exemption is permitted, "whether or not [the debtor] had a colorable statutory basis for claiming it." Taylor, 503 U.S. at 644.

**D.      Response to Chapter 7 Trustee's Arguments.**

**1.      The B.A.P. decision applied binding Supreme Court authority and did not create any new exemption.**

The Chapter 7 Trustee asserts that the B.A.P. erred by effectively creating a new exemption when it reversed the trial court's Order.  (See Appellant Munding's Corrected Opening Brief, p. 17)  He cites multiple cases, each of which is entirely distinguishable from this matter in a dispositive way.  Specifically, none of the cases cited by the Chapter 7 Trustee involved a circumstance in which an exemption was claimed in a way that would put a trustee or interested party on notice of an intention by the debtor to claim the entire or aggregate interest in the property as exempt.

The Chapter 7 Trustee first cites to a line of cases involving the question of which party receives the benefit of post-petition appreciation, including Wilson v. Rigby, 909 F.3d 306, 309 (9th Cir. 2018); In re Gebhart, 621 F.3d 1206, 1210 (9th Cir. 2010); and Klein v. Chappell (In re Chappell), 373 B.R. 73 (B.A.P. 9th Cir. 2007).  As the Chapter 7 Trustee correctly notes, each of these cases involved exemption claims that were within colorable limits, none of which included any non-numerical exemption claims such as 100 percent of fair market value.  In short, none of the cited cases would have required or necessitated any objection by the trustee or other interested party in order to preserve rights for the estate to maintain any interest in the residence for the benefit of creditors.  Moreover, none of the cited cases put the trustee or interested parties on notice that the Debtor was seeking to

claim the entirety of/aggregate interest in the property as an exemption, again unlike Masingale's claim, which exempted the full aggregate amount of 100% of FMV." See Schwab, 560 U.S. at 790. Masingale's claim of "100% of FMV" as identified by Justice Thomas in Schwab does not rely on a statutory limit, does not state a dollar amount or any maximum amount, and does not identify any specific number for the exemption – it is an exemption claim for the entirety of/aggregate total of the residence.

The Chapter 7 Trustee argues that In re Gebhart provides "what is frozen as of the date of the filing of the petition is the value of the debtor's exemption, not the fair market value of the property claimed exempt." See Appellant Munding's Corrected Opening Brief, p. 21 (quoting In re Gebhart, 621 F.3d at 1211) He contends that because the statutory exemption is limited to an "interest" in property capped at a certain dollar value, such statutory value fully controls the outcome in this case. As the B.A.P. properly recognized, the Chapter 7 Trustee is incorrect, as his proposition completely disregards the Supreme Court authority cited herein and ignores the fact that the exemption claimed by Masingale was what was described by the Schwab court as a "'value claimed exempt' that was *not* plainly within the limits the Code allows." Id. at 789 (emphasis in original). His argument fails to take into account what Masingale claimed in the box titled "Value of Claimed Exemption," which was "100% of FMV," thus necessitating an objection by a trustee

or interested party.  Again, in the absence of an objection, the exemption is set and no further objection to it will be heard, "whether or not [the debtor] had a colorable statutory basis for claiming it."  Taylor, 503 U.S. at 644; 11 U.S.C. § 522(l); and Fed. R. Bankr. P. 4003(b).

So when a debtor asserts a statutorily permissible amount for an exemption in which only an "interest" is exempted for the debtor, a common result is that the property itself stays as part of the estate under established Ninth Circuit authority; however, here the exemption was for the entirety of/aggregate of the residence, as outlined in Schwab and it is uncontested that no trustee or interested party timely objected to the exemption claim in this case.

Moreover, what was exempted as a result was 100% of fair market value of the house, which, per In re Gebhart, is not frozen at the time of the petition.  In re Gebhart, 621 F.3d at 1211.  Schwab, in response to arguments from the parties, clarified why its decision warranted a different result from Taylor, noting:

> Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as 'full fair market value (FMV)' or '100% of FMV.' Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits.  If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset.

Schwab, 560 U.S. at 792-93.  As recognized by the B.A.P., that is exactly what Masingale did here.

Wilson v. Rigby, also distinguishable from the instant case, involved a Chapter 7 debtor who owned a condominium and in her initial schedules, claimed a federal homestead exemption in the dollar-specific amount of $3,560.00, constituting the difference between the value of $250,000.00 and the encumbrances against the property which amounted to $246,440.00.  Id. at 308.  The debtor subsequently amended her schedules to claim "100% of fair market value, up to any applicable statutory limit" under Washington's homestead exemption statutes after the value of the property increased.  Id.  After the trustee timely objected to the amendment, the trial court disallowed the debtor's efforts to amend the claim, citing the premise that the relevant time frame for valuing an exemption is the date of the petition.  This basic factual posture of Wilson reveals it is not determinative of anything in the instant case, as Masingale never claimed a dollar-specific amount in the Petition or schedules, and there was no objection to a non-dollar-specific claim that was outside of the relevant statutory amounts on its face.  Pursuant to Taylor, any new challenges to already fixed exemptions are barred, including challenges to the validity of the claimed exemption.

The Chapter 7 Trustee and the State of Washington both contend that other required pleadings filed in Masingale's Chapter 11 case (the confirmed Plan and

Disclosure Statements) are contrary to Masingale's claim of an aggregate exemption of her residence. These claims, however, fail to take into account the language of Taylor, which provides that no further objection to the exemption is permitted, even if the exemption was for more than may be statutorily permitted. These arguments also fail to take into account that Schwab directs courts, creditors, trustees and any interested parties which particular entries are determinative as to whether the exemption claim is beyond what may be authorized by law or statute. Specifically, the Schwab court directed that trustees and interested parties are to look at:

> three, and only three, entries on [the debtor's] Schedule C: the description of the [property] in which [the debtor] claimed the exempt interests; the Code provisions governing the claimed exemptions; and the amounts [the debtor] listed in the column titled "value of claimed exemption.

Schwab, 560 U.S. at 785. If the amount claimed exempt is within the statutory limits, there is no need for any interested party to object and the estate will retain interests in the exempted asset above the amount claimed as exempt. Again, the values listed in Schwab were within statutory limits, while the entry of "100% of FMV" in this case was not.

### 2. The authorities cited by the Chapter 7 Trustee are not determinative of what happens to post-petition appreciation in this circumstance.

As to post-petition appreciation, the Chapter 7 Trustee asserts that any appreciation from the residence belongs to the estate and not to Masingale. While

he has pointed to multiple cases that outline circumstances in which post-petition

appreciation does inure to the estate, this case presents a very different fact set than

any of the cases that have dealt with efforts by trustees to realize on increased

property values – specifically, none of the cases has involved an unchallenged

exemption claim of "100% of FMV." As the B.A.P. correctly recognized, failing to

object to a non-statutory based exemption claim results in a waiver of all rights of

all interested parties, trustees included, from objecting to the same now.

Several cases do indicate, at least by negative inference, that in a circumstance

like this one, the Estate has no right to any interests in the exempted property. For

example, the language in In re Gebhart, referencing Schwab, provides:

> Even when a debtor claims an exemption in an amount that is equal to
> the full value of the property as stated in the petition and the trustee
> fails to object, the asset itself remains in the estate, at least if its value
> at the time of filing is in fact higher than the exemption amount.[4]

In re Gebhart, 621 F.3d at 1210 (citing Schwab, 560 U.S. at 2661-62; 2666).

Footnote 4 provides:

> We note that Reilly did not address instances in which the full value of
> property at the time of filing is in fact equal to or less than the monetary
> limit provided for by the relevant bankruptcy exemption. Although the
> Court expressed skepticism about the issue, it left open whether such a
> claim would entitle a debtor to the property itself as opposed to a
> payment equal to the property's full value…As in Reilly, the facts of
> these cases do not implicate this scenario, because the debtors here
> claimed as exempt only their equity interest in their properties (the
> difference between the value of the homesteads and the mortgages with
> which they were encumbered), not the full fair market value of their
> properties.

Id. at fn 4.  The scenario to which this footnote is referencing from Schwab was the claim of the debtor who had listed statutorily permitted and specific dollar amounts as exempt when those specific dollar amounts were also the same as the values that the debtor listed for the tools in other schedules.  For clarification, neither the Schwab debtor nor the In re Gebhart debtors asserted a "100% of FMV" claim," but instead argued that by listing the entire value asserted of property and then using that same number as the exemption claim amount, the debtor would have been claiming an aggregate interest sufficient to put a trustee on notice of a need to object. The Schwab court did not allow that debtor the aggregate exemption, as it was not clearly putting interested parties on notice that the exemption was for the full aggregate interest in the property.

The logical implication of this distinction is that if an aggregate/full interest in property is claimed by a debtor and no trustee or party in interest objects, the result is the removal of the asset from the estate.  The language in Schwab is direct -- "Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it **and preserve for the estate any value in the asset beyond relevant statutory limits.**" Id. at 793 (emphasis added).  The straightforward message of Schwab's directive is that in the absence of any objection, there is NO portion of the value of the asset preserved for the estate.  This is also consistent with the language of 11 U.S.C. § 522(c) that once property is exempted from the estate,

it is not liable during or after the case for debts of the debtor incurred prior to the case.

### 3. The Chapter 7 Trustee's argument that there was no requirement to object is incorrect.

Finally, the Chapter 7 Trustee argues that neither Fed. R. Bankr. P. 4003(b), nor 11 U.S.C. § 522(l) required an objection to the claimed exemption. He relies on the use of the word "may" in Fed. R. Bankr. P. 4003(b), which he asserts as meaning that no trustee was required to object in order to preserve the rights of the estate. See Appellant Munding's Corrected Opening Brief, p. 23. He contends that if he had timely filed an objection to Masingale's exemptions (presuming that he was a part of the case at that time), it would have lacked merit and been sanctionable because the claimed exemption was just to the type of property, i.e., a homestead exemption, which is facially permissible. Id. This argument, however, entirely ignores the three-step approach provided by the Schwab court for a trustee to use to evaluate whether or not an objection is warranted, which specifically points to the entry titled "Value of Claimed Exemption," which in this case included an entry that did not limit itself to any statutory requirements and was objectionable on its face. Id. at 785.

Both the Chapter 7 Trustee and the State of Washington argue that because it is possible to determine the equity in the property from the initial petition, which the trial court also did here, no objection was required and, moreover, there was no

Chapter 7 Trustee appointed in the Chapter 11 case who could have objected in the applicable time limit.  See Appellant Munding's Corrected Opening Brief, pp. 24-25; Opening Brief of the Appellant State of Washington, pp. 37-38.  As to the first issue, the fact that someone could do the math does not negate the red flag raised by what Masingale actually claimed as exempt, as outlined in detail by the Schwab court.  Appellants contend that the Chapter 11 Plan and Disclosure Statement are determinative of what Masingale was actually exempting. See Appellant Munding's Corrected Opening Brief, pp. 28-29.  Again, the Schwab court has already told trustees and interested parties, including the State of Washington, what they need to look at to make the determination of whether there is a need to object, using "three, and only three" entries, none of which are the documents cited to by the Chapter 7 Trustee or the State of Washington here.  Id. at 785.  The question is what was claimed as exempt, not what it appears the debtor had actually intended based on other documents.  And again, in the absence of a timely objection, the exemption is set and neither the State of Washington nor the Chapter 7 Trustee can challenge it now.  The arguments presented by the Chapter 7 Trustee and the State of Washington lack merit and should be disregarded.

The Chapter 7 Trustee and State of Washington also assert that Taylor cannot apply, as there was no Chapter 7 Trustee assigned in the Chapter 11 case.  This argument is of no merit, as the State of Washington was present, along with any

number of other interested parties, each of whom is presumed to know the law. Moreover, Congress clearly intended that exemptions were to be set and finalized within the Chapter 11 case, as it promulgated Fed. R. Bankr. P. 1019(2)(B)(i), which contains an express exclusion if a Chapter 11 plan has been confirmed for more than a year prior to conversion to a Chapter 7, as happened here. Per that rule, the only logical conclusion that can be drawn is that the Supreme Court did not intend that the exemption period should be reopened in this situation.

### E. Additional arguments posed by the State of Washington.

Many of the arguments of the State of Washington are duplicative of those made by the Chapter 7 Trustee, for which response to both Appellees is intended. For sections that are not duplicative, Masingale responds as follows:

> **1. This Court should ignore the efforts of the State of Washington to disparage Masingale and to paint this Court's opinion in an effort to convince this Court to reverse the B.A.P.**

The State of Washington dedicates the first twenty or so pages of its opening brief and much of the rest of the brief to a scathing diatribe about both Monte Masingale, who is deceased, and Rosana Masingale, Appellee herein, who is now a widow raising a daughter. To be clear, this appeal is about whether the trial court, in January 2022, improperly changed the exemption that Masingale claimed back in 2015 when it issued its order permitting the Chapter 7 Trustee to sell her residence. So, while the State of Washington and the Chapter 7 Trustee certainly have duties

to their respective unsecured creditors and constituents, such a diatribe is neither helpful, nor relevant to any of the matters being decided in this appeal. Nor is any consideration of alternative sanctions that have not been imposed at this time. As such, Masingale asks this Court to consider the legal issues before it and to disregard the potshots taken by the State of Washington herein, especially after it failed to timely object in 2015 when it had the opportunity to do so.

> **2.** **This appeal is not about a breach of contract; it is about the effect of a claimed exemption based on Supreme Court authority.**

In its Opening Brief, the State of Washington contends that the initial exemption claim by Masingale must be limited solely to what was statutorily permitted pursuant to the federal exemption statutes because the Chapter 11 Plan that was ultimately confirmed and the supporting documents from the same constitute an enforceable contract and a judgment, thus opening the door for the application of res judicata on the exemption amount issue. <u>See</u> Opening Brief of Appellant State of Washington, pp. 26-34. This argument fails for multiple reasons, the first of which, as outlined above, is that it completely ignores the language of a United States Supreme Court case the State of Washington frequently cites, <u>Schwab</u>, providing that the determination of the need to object or lose the rights associated with failing to object is made by review of three, and only three, entries on the petition, none of which are the subsequent documents referenced by the State of

Washington. Id. at 785. While a reviewing court may look at other reasons by which it could decide an issue that are apparent from the record, it should not do so here, as doing so would ignore the Schwab directive to look to three, and only three entries to determine whether an objection was required. Id. at 785.

This argument also fails because once no objection is made, no challenge to the validity of exemption is permitted, "whether or not [the debtor] had a colorable statutory basis for claiming it." Taylor, 503 U.S. at 644. And per 11 U.S.C. § 522(l), unless an interested party objects, the property claimed as exempt is exempt. While the State of Washington and the Chapter 7 Trustee may not like the "unwelcome results" including their inability to now contest the validity of the established exemption of "100% of FMV," the Taylor court recognized the impact of the short deadline, noting that it will "prompt parties to act and [such deadlines] produce finality." Id. at 644.

Finally, the State of Washington's argument about res judicata also fails, as the authority cited by the State of Washington, In re Wolfberg, 255 B.R. 879 (B.A.P. 9th Cir. 2000), aff'd, 37 F. App'x 891 (9th Cir. 2022), is entirely distinguishable from this matter. Specifically, the debtor in a Chapter 11 case did not claim a homestead exemption in its schedules, and agreed to confirm a plan by which the home of the debtors would be the source of funding for the Chapter 11 plan. After the Chapter 11 trustee sold the property, the debtors attempted to then claim a homestead

exemption against a portion of the proceeds. Id. at 881. The B.A.P. ultimately considered the matter and based on res judicata of the confirmed plan, disallowed debtor's post-confirmation claim of exemption.

The facts in this case are the reverse of those in In re Wolfberg, as Masingale's exemptions became final long before the plan was confirmed. It is further distinguishable as the amended exemptions in In re Wolfberg were within the statutory limits, again unlike this case. In re Wolfberg has no application to the matter before this Court. The State of Washington is unable to overcome the fact that it failed to object when the Supreme Court has identified a claim of 100% of FMV as raising a red flag of such a need to object if the interested party wants to retain any interest in the asset for the estate.

### 3. Masingale's exemption claim was not ambiguous, nor was it based on any gimmick.

Nor does the State's argument that "100% of FMV" is ambiguous have merit. Masingale's claimed exemption mirrors that referenced in Schwab and it means what it says – the full value of the property identified. Specifically, the State of Washington argues that because other lines and boxes were completed in the petition such that a reviewing party could calculate the existing equity in the residence at the time of filing, just as the trial court did here, that Masingale must have actually meant 100% of available equity. The problem with this assertion is that it ignores what Masingale claimed as exempt – "100% of FMV." Construing 100% of fair market

value to mean 100% of the equity in the residence at the time of filing turns the actual exemption claim on its head and would have the effect of negating the option outlined and provided by Schwab, despite the fact that Schwab is still good law. That good law provides that when a debtor wants to exempt the aggregate total of property so as to remove all interest in the property from the estate, the debtor can make such intention clear by listing the exemption as "100% of FMV" or "full fair market value." Schwab, 560 U.S. at 792-93. That is exactly what Masingale did here. To contend that the entry provided by Masingale in the box titled "Value for Claimed Exemption" did not actually mean what it says is simply too tenuous and should not be considered by this Court.

The State of Washington calls the decision to follow the directive of the Supreme Court a "gimmick." Opening Brief of Appellant State of Washington, p. 35. It is anything but a gimmick. While the State of Washington and the trial court both indicated that the language related to 100% of fair market value in Schwab was dicta and thus should be effectively ignored, it is well-established law that "[c]onsidered dicta" from the Supreme Court is afforded "a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold." Managed Pharmacy Care v. Sebelius, 716 F.3d 1235, 1246 (9th Cir. 2013). Moreover, such dicta "is not to be lightly disregarded" and is treated with "due deference." See Laub v. United States Dept. of Interior, 342 F.2d 1080, 1090, fn. 8 (9th Cir. 2003);

see also McCalla v. Royal MacCabees Life Ins. Co., 369 F.3d 1128, 1132 (9th Cir. 2004). This properly tracks the B.A.P.'s language cautioning the State of Washington regarding the then-Appellees' arguments to not disregard the language so easily. The language at issue was the Supreme Court distinguishing and providing examples of the differences between its decisions in Taylor and Schwab after the trial and appellate court in Schwab had indicated that it was constrained by the holding in Taylor. This language and reliance on using such terms as 100% of FMV based on the same continues to this day.

### 4. Applicability of Snapshot Rule.

Masingale does not disagree that the "snapshot rule" can fix an amount as of a certain point in time. Masingale disagrees as to what amount was fixed in this case and asserts that the fixed amount was exactly what it says it is, 100% of FMV. Under 11 U.S.C. § 522(c), Taylor and Schwab, the only reasonable conclusion as to what 100% of FMV means is all of the fair market value in the property and, per Schwab, such a designation indicates the debtor has sought to "exempt the full market value of the asset or the asset itself." Id. at 792. Masingale indicated an intention to exclude the residence from any use by the estate and, following the sale of the property by the Chapter 7 Trustee, Masingale is entitled to the proceeds from the same.

The B.A.P. agreed with this analysis, while recognizing it was an issue of first impression in the Ninth Circuit. It is acknowledged that Ninth Circuit authority does provide that post-petition appreciation inures to the benefit of the estate in certain situations, such as when the exemption claim is within the statutory limits at the time of filing and only an interest in the asset is exemptible by statute. See Wilson v. Rigby, 909 F.3d at 311. However, Masingale, following Taylor and Schwab, claimed an exemption of "100% of FMV," which on its face is not identifying any particular amount as exempt and is not dependent on any statutory limits of the same. Per Taylor, the result of Masingale's claimed exemption was to put interested parties on notice of a need to object and in the absence of any such objection, the residence can be of no benefit to the estate moving forward. "The effect of an exemption is that the debtor's interest in the property is 'withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.'" In re Gebhart, 621 F.3d at 1210 (quoting Owen v. Owen, 500 U.S. at 308); accord Smith v. Kennedy (In re Smith), 235 F.3d at 478 ("It is widely accepted that property deemed exempt from a debtor's

bankruptcy estate revests in the debtor.").[4]  The interest withdrawn here was one-hundred percent (100%) of the residence, irrespective of any statutory limits.

In re Gebhart provides that in cases where there are statutory caps and in which debtors list a statutorily permissible amount as exempt, the property itself stays in the bankruptcy estate "at least if its value at the time of filing is in fact higher than the exemption amount," in which case only an interest in the amount of the exemption is removed from the estate.  Id. at 1210.  As the B.A.P correctly recognized, the reason this does not apply to Masingale is that Masingale did not list an exemption amount that was within the statutorily permissible amounts of 11 U.S.C. § 522(d)(1), as outlined in Schwab and thus, the "value at the time of filing" was not "in fact higher than the exemption amount."  Id.

The only case that Masingale was able to locate that speaks to what happens when a debtor utilizes the Schwab 100% of FMV exemption in circumstances where (1) the exemptible amount has a statutory dollar-specific, monetary cap, and (2) in

---

[4] This same set of quotations also appears in In re Mwangi, 764 F.3d 1168, 1174 (9th Cir. 2014).  That case involved funds held by Wells Fargo for which the debtor claimed certain statutorily-permitted exemptions.  The case is not factually applicable to this matter, but is cited in an overabundance of caution as the language in the opinion also cites to In re Gebhart, but in summarizing that holding, removes the phrase "at least if its value at the time of filing is in fact higher than the exemption amount" and does not otherwise reference it.  As that phrase would not have been relevant to the question the Mwangi court was addressing, Masingale asserts this distinction is of no matter, but she nevertheless provides it here in the spirit of transparency.

which post-petition appreciation was considered by the reviewing court is an unpublished 5th Circuit case, In re Ayobami, 15-35488, 2016 WL 3854052, at *9 (Bankr. S.D. Tex. June 9, 2016), certified question answered sub nom, In matter of Ayobami, 879 F.3d 152 (5th Cir. 2018). Masingale offers it here, not as binding authority, but as a resource for this Court to see how a different circuit has handled something similar. The schedules referenced in that case are different from those used by Masingale here, (and in fact, were updated based on the Schwab opinion), but the substance deals with the idea that the property claimed as fully exempt may remain in the estate even after no trustee or interested party objects, but only as a bare title interest, while the debtor retains 100% of the actual interest in the property. The determination by the Ayobami court in that matter was that post-petition appreciation inures to the debtor, not to the estate. This approach is reasonable in this situation if this Court decides that the residence somehow remained a part of the bankruptcy estate. Such a determination can also be fully consistent with the language of 11 U.S.C. § 522(c), which again provides that unless the case is dismissed, which it has not been here, property exempted "is not liable during or after the case for any debt of the debtor" arising before the commencement of the case unless certain exceptions apply, none of which do here. As the 5th Circuit case and 11 U.S.C. § 522(c) provide, even if the residence technically remains as property of the estate, the debtor's interest in the property will be removed "and the estate

retains only bare title to the asset. Any post-petition appreciation of the asset will go to the debtor." In re Ayobami, at *9.

Masingale is entitled to one hundred percent (100%) of the proceeds from the sale of the residence, based on the authorities cited herein. Those authorities indicate that the residence was effectively removed from the estate at the expiration of the objection period in the Chapter 11 case. However, the procedural realities of this case to date have included the Chapter 7 Trustee already selling the residence and paying off the mortgage, such that the only remaining asset related to the residence is in the form of money, which the Chapter 7 Trustee is currently holding. Masingale is entitled to that money, as recognized by the B.A.P., as, regardless of whether the residence was removed from the estate in 2015 or remained in the estate as a mere bare title interest as found by the Ayobami court, nothing was preserved by the estate and none of the authorities cited for post-petition appreciate inuring to the estate involve any scenario in which no objection was made to a claim of "100% of FMV."

The B.A.P. correctly decided this issue of first impression. The State of Washington, however, has raised the alternative concept that if this Court agrees that in the absence of any objection, Masingale's exemption of 100% of FMV stands, that it should nevertheless limit the 100% of FMV to the fair market value at the time the Chapter 11 was filed, which was stated as $165,430.00, thus incorporating the post-petition appreciation holdings from Gebhart and Wilson as addressed above

in response to the Chapter 7 Trustee's arguments. (4-StateER-722) For the reasons already stated above, Masingale disagrees that the estate has maintained any interest in any post-petition appreciation, as the exemption as originally claimed lines up more accurately with the <u>Taylor</u> fact scenario than with either the <u>Schwab</u>, <u>Gebhart</u>, or <u>Wilson</u> fact scenarios. But in the event this Court decides that the initial and unchallenged exemption was valid, as it is required to do by <u>Taylor</u> and <u>Schwab</u>, but disagrees that such a claim would entirely remove any interest from the estate such that post-petition appreciation could inure to the estate, Masingale must be awarded, at a minimum, the $165,430.00[5]. This is not a concession or an agreement by Masingale that such a determination would be correct and instead is simply an economic evaluation of options available to this Court in this issue of first impression.

## VI. CONCLUSION.

Masingale respectfully asks the Ninth Circuit to affirm the reasoned opinion of the B.A.P. in its entirety, awarding Masingale all proceeds of the sale of her residence by the Chapter 7 Trustee. In the event that this Court is persuaded by the State of Washington's argument, Masingale nevertheless asks this Court to award

---

[5] It is acknowledged that the trial court has already permitted the Chapter 7 Trustee to issue payment to Masingale in the non-contested amount of $45,950.00, following the B.A.P.'s decision, so the amount due to Masingale would be reduced by such amount.

her at a minimum, $165,430.00, constituting the value of her residence at the time of filing.

DATED this 7th day of July, 2023.

/s/ Darren M. Digiacinto
DARREN M. DIGIACINTO, WSBA #39771
Attorneys for Appellee Masingale
Winston & Cashatt, Lawyers, PS
601 West Riverside Avenue, Suite 1900
Spokane, WA  99201
509-838-6131

## STATEMENT OF RELATED CASES

Pursuant to the Ninth Circuit Local Rule 28-2.6, Appellee Masingale states that there are no related cases in this Court.


_____/s/ Darren M. Digiacinto_____
DARREN M. DIGIACINTO, WSBA #39771          Dated: July 7, 2023

## Certificate of Compliance

Pursuant to Federal Rules of Appellate Procedure (FRAP), the undersigned certifies that Appellee's Response Brief complies with the type and volume limitations imposed by FRAP 32(a)(7)(B) and that Appellee's Response Brief contains 9,356 words (excluding the cover page, tables, signature blocks and required certificates) as counted by the computer program used to prepare the Response Brief.

DATED this 7th day of July, 2023.

___/s/ Darren M. Digiacinto_____
DARREN M. DIGIACINTO, WSBA #39771
Winston & Cashatt, Lawyers, PS
601 West Riverside Avenue, Suite 1900
Spokane, WA 99201
509-838-6131
Attorneys for Appellee Masingale

2016 WL 3854052
United States Bankruptcy Court,
S.D. Texas, Houston Division.

IN RE: Yemisi AYOBAMI, Debtor.

CASE NO: 15–35488
|
Signed June 9, 2016

**Attorneys and Law Firms**

Susan Tran, Corral Tran Singh LLP, Houston, TX, for Debtor.

*SUPPLEMENTAL MEMORANDUM OPINION*

Marvin Isgur, UNITED STATES BANKRUPTCY JUDGE

**\*1** The Court issues this Supplemental Memorandum Opinion to address the issues raised in Chapter 13 Trustee David Peake's motion requesting clarification of the Court's Memorandum Opinion issued on March 1, 2016. (ECF No. 73 and 76).

In the March 1 Memorandum Opinion, among other things, the Court concluded:

- If a debtor claims an interest in an asset that is measured in dollar value (as did Ms. Reilly in *Schwab* ), any increase in value goes to the Estate.

- If a debtor claims an interest that is measured in a percentage ownership of an asset (as Ms. Ayobami did in this case by claiming a 100% interest), any increase in value goes to the debtor.

(ECF No. 73 at 4). The Court further concluded that this result was "inescapably driven by the text of the statue and by *Schwab* [v. *Reilly*, 560 U.S. 770 (2010) ]." (*Id.*).

**Background**

On March 28, 2016, a hearing was held on Mr. Peake's motion to clarify. At the hearing, Mr. Peake urged the Court to reconsider its interpretation of *Schwab*. In its March 1 Memorandum Opinion, this Court determined that *Schwab*, in conjunction with the text of 11 U.S.C. § 522, allowed a debtor the option of exempting an interest in an asset from the

estate, without respect to future changes in the value of that interest. Before *Schwab*, some believed that under a dollar-limited-exemption statute a debtor was only able to exempt a fixed monetary interest in an asset. However, the Supreme Court in *Schwab* indicated that a debtor may be able to exempt her entire interest in an asset—even under a dollar-limited-exemption statute. The Supreme Court offered language that debtors could use to indicate an intention to exempt a 100% interest in the asset. The exemption explained by the Supreme Court is distinct from a fixed monetary interest primarily because it would allow post-petition fluctuation in value.

The relevant language of *Schwab* upon which this Court based its conclusion is reproduced below:

Where, as here, it is important to the debtor to exempt the full market value of the asset *or the asset itself* our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV." Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits. If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption.

*Schwab,* 560 U.S. at 792–93 (emphasis added).

In a footnote, the Supreme Court recognized that a debtor's ability to exempt the property itself (as opposed to an interest in property) may not be available under the Code. In response to Reilly's argument that "once the thirty-day deadline passed without objection she was entitled to know that she would emerge from bankruptcy with her cooking equipment intact[,]" the Court stated:

**\*2** [H]er argument assumes that a claim to exempt the full value of the equipment would, if unopposed, entitle her to the equipment itself as opposed to a payment equal to the equipment's full value. That assumption is at least questionable. Section 541 is clear that title to the equipment passed to Reilly's estate at the commencement of her case, and §§ 522(d)(5) and (6) are equally clear that her reclamation right is limited to exempting an interest in the

In re Ayobami, Not Reported in B.R. Rptr. (2016)

Case: 22-60050, 07/07/2023, ID: 12750590, DktEntry: 34, Page 47 of 54

76 Collier Bankr.Cas.2d 1279

equipment, not the equipment itself. Accordingly, it is far from obvious that the Code would entitle Reilly to clear title in the equipment even if she claimed as exempt a 'full' or '100%' interest in it (which she did not). Of course, it is likely that a trustee who fails to object to such a claim would have little incentive to do anything but pass title in the asset to the debtor.

*Id.* at 794 n. 21[1].

Although some of the implications of *Schwab* to Ms. Ayobami's case are derived from dicta, the Court is bound by Supreme Court dicta "almost as firmly as by the Court's outright holdings...." *Gaylor v. U.S.,* 74 F.3d 214, 217 (10th Cir.1996); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 562 (3d Cir.2003) ("[w]e should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket."). The fact that some of the dicta in *Schwab* that bears materially on the present case is stated in a footnote does not diminish its significance. *Phillips v. Osborne,* 444 F.2d 778, 782 (9th Cir.1971) (dismissing a party's attempt to diminish the significance of a footnote, stating "[w]e think that the location, whether in the text or in a footnote, of something which the writer of an opinion thinks should be sai[d], is a matter of style which must be left to the writer.").

**Analysis**

**I. Treatment of exemptions post–*Schwab***

The Court will address three opinions interpreting *Schwab* and its effect on debtors attempting to exempt more than a fixed monetary interest in an asset.

**a. *In re Orton,* 685 F.3d 612 (3d Cir.2012).**

The Third Circuit addressed whether a debtor, who exempted a 1/8 interest in a piece of real estate subject to an oil and gas lease (but with no well drilled) with a value within the § 522(d)(5) limit, was entitled to the "benefits and risks of future ap- or depreciation, free from any creditors' claims." *In re Orton,* 687 F.3d 612, 614 (3d Cir.2012). Orton, the debtor, contended that he was entitled to any future appreciation in the lease's value which may arise from the discovery of oil and gas and the drilling of a well. *Id.* It is important to note that Orton failed to follow *Schwab's* instruction to indicate his

intent to exempt " 'full fair market value (FMV)' or '100% of FMV.' "

Orton argued that because he *accurately* valued his interest in the property and lease (something Reilly in *Schwab* failed to do), it was of no consequence that he failed to indicate his intention to exempt 100% FMV. The court did not agree with Orton's attempts to distinguish his case from *Schwab* and ultimately held that Orton was limited to the dollar value he claimed as exempt, not the full market value of the real estate and lease. *Id.* at 618. Furthermore, the court held that any appreciation in the asset's value beyond the monetary interest exempted would devolve to the estate.

**\*3** The actual holding of *Orton* has limited value with respect to the issue before the Court because Orton failed to follow *Schwab's* explicit instructions. However, dicta in *Orton* bears substantially on the issues faced by the Court.

First, the court in *Orton* stated that "[t]he rationale in *Schwab* focused on concerns about placing trustees on notice, not concerns about inaccurate debtor valuations." *Id.* at 617. This "notice purpose only" sentiment is one echoed by the chapter 13 trustee in this case, and the Court will address it in further detail in Section II of this Supplemental Memorandum Opinion.

Second, the court addressed the footnote in *Schwab* and its apparent inconsistency with the body of the opinion. The court concluded that, "[a]t the very least, the [Supreme Court] was clear that exemptions under § 522(d)(5) are presumed to preserve a debtor's 'interest' in an asset rather than the asset itself; a debtor seeking to retain more than an 'interest' must indicate that fact unambiguously in the Schedules." *Id.* at 617–18.

**b. *In re Massey,* 465 B.R. 720 (B.A.P. 1st Cir.2012)**

In 2012, the First Circuit Bankruptcy Appellate Panel conducted a survey of post–*Schwab* cases in an attempt to resolve the uncertainties created by *Schwab.* The court concluded, "[e]ven if we accept the premise that the import of *Schwab* remains unclear, one thing is certain: most, if not all courts which have specifically addressed exemptions of '100% of FMV' in the wake of *Schwab* have found such exemptions impermissible. No court has interpreted the Supreme Court's holding as either unfettered authorization for debtors to exempt assets in-kind, or as a mandate for courts to allow such exemptions." *In re Massey,* 465 B.R. 720, 727 (B.A.P. 1st Cir.2012).

In *Massey*, joint debtors claimed exempt a jointly owned residence valued at $92,000.00 and a jointly owned vehicle valued at $1,455.00. The debtors' Schedule C indicated that the amount of their claimed exemptions in both the residence and the vehicle was "100% of FMV," pursuant to § 522(d). The Masseys did not assign a dollar value to their interest. The bankruptcy court sustained the chapter 13 trustee's objection to the debtors' exemption of 100% of FMV in the residence and vehicle. The Masseys appealed this aspect of the bankruptcy court's ruling. The thrust of the Masseys' argument that the bankruptcy court erred in sustaining the trustee's objection can best be summarized as follows:

> The [Supreme] Court [in *Schwab* ] is *not* saying that a debtor can't keep assets subject to a capped exemption. It is saying instead that the Code does not give the debtor the right to exempt property in-kind if the property's value exceeds the cap. The Bankruptcy Judge misinterpreted the distinction as implying the former, and that was error.

*Id.* at 724. The Trustee argued that the Masseys' claimed exemptions were facially defective because they failed to claim a specific dollar amount under §§ 522(d)(1)-(2), and that the exemption in the residence exceeded the statutory limit. *Id.*

The *Massey* court held that an exemption of "100% of FMV" is facially invalid. *Id.* at 729. The court indicated that it would sustain such an objection unless the debtor amended the exemption to claim a dollar amount for his exempt interest in the property—an approach recommended by our sister Texas bankruptcy court in *In re Salazar*, 449 B.R. 890, 897–98 (Bankr.N.D.Tex.2011). *See also In re Luckham*, 464 B.R. 67, 77 (Bankr.D.Mass.2012) ("where the statutory basis for a debtor's claim of exemption provides only for an exemption of an interest in certain property up to a specific dollar amount, the 'value of claimed exemption' must be identified as a monetary value. Nothing in *Schwab* ... dictates otherwise....").

**\*4** The debtors in *Massey* failed to assign a dollar value to their claimed exemption.[2] All of Ms. Ayobami's amended exemptions list a dollar value within the statutory limits. Consequently, the Court is faced with a different issue than the courts in *Massey* and *Orton*: whether a debtor is able exempt a 100% interest in an asset if (1) the debtor follows the *Schwab* "100% of FMV" instructions and (2) the exempt interest has a dollar value, disclosed on the schedules, that is within the statutory limits.

**c. *In re Salazar*, 449 B.R. 890 (Bankr.N.D.Tex.2011).**
In 2011, a bankruptcy court from this Circuit was presented with a case very similar to the present case. In *In re Salazar*, the court consolidated several cases with similar issues. In three of the consolidated cases, Chapter 13 debtors electing to take federal exemptions indicated "an actual dollar amount for the value of each of their claimed exemptions in addition to the '100% of FMV' claim." *In re Salazar*, 449 B.R. 890, 893 (Bankr.N.D.Tex.2011).

In *Salazar*, the trustee objected to the debtors claimed exemptions, and the court was faced with the question of how to proceed. The court outlined at least two possible methods of dealing with an objection to a "100% of FMV" exemption. The first method, set forth by a bankruptcy court in *In re Moore*, 442 B.R. 865, 868 (Bankr.N.D.Tex.2010), required the court to conduct an evidentiary hearing on the objection where "the debtor has the burden of going forward to establish at least a plausible basis for a claim that '100% of FMV' of an asset falls within the statutory limit...." *In re Salazar*, 449 B.R. at 897. The trustee would then have the burden to prove that the claimed exemption exceeded the statutory limit. If the trustee failed to meet its burden, the objection would be overruled and the "asset claimed will no longer be part of the estate." *Id.*; *In re Moore*, 442 B.R. at 868. The *Salazar* court did not follow this approach, and further disputed the *Moore* conclusion that the asset would leave the estate.

The second method, and the approach adopted by the court in *Salazar*, involves the Court simply declaring an objection to a "100% of FMV" claim of exemption to be a facially valid objection. The court then would sustain the objection unless the debtor amended his exemption to claim "a dollar amount for his exempt interest in the property." *Id.* at 897. This Court finds no support for this approach in the statute.

Because the debtors' exemptions were limited to an *interest* in the property, not the property itself, the *Salazar* court concluded that a valuation hearing was unnecessary. "The value of the property itself is relevant only to the extent that there is sufficient value to support the amount of the exemptible interest." *Id.* at 898. If the trustee does not object, the "100% of FMV" exemption claim stands. However, the *Salazar* court made clear that the exemption claim is "still limited to his interest in the property[ ]" because "title to the property does not pass to the debtor even if no objection is filed." *Id.* at 900; *Schwab*, 560 U.S. at 794 n. 21.

In addition to setting forth the above analytical framework, the *Salazar* court also addressed how post-petition appreciation in value would affect a debtor's "100% of FMV" exemption claim. The court cited the Ninth Circuit's opinion in *In re Gebhart,* for the proposition that a debtor is not entitled to post-petition appreciation on their exempt interest. *Id.* at 901. This Court will analyze *Gebhart* in further detail below, but at this juncture an important distinction is apparent. In *Gebhart,* the debtors failed to make an exemption claim of "100% of FMV" and were consequently limited to the fixed dollar amount they claimed exempt. *In re Gebhart,* 621 F.3d 1206, 1208 (9th Cir.2010). In light of *Gebhart,* the *Salazar* court concluded:

> **\*5** Accordingly, if the trustee wishes to preserve for the estate any excess value—value over the amount of the statutory limit that may exist either at the time the exemption is claimed, as was the case in *Schwab,* or any excess value that may exist as a result of anticipated appreciation in the property, as happened in *Gebhart* — the trustee must object to the exemption claim itself.

*In re Salazar,* 449 B.R. at 900. To avoid confusion, the *Salazar* court stated, "to be clear, in the unlikely event that an asset, an interest of which has been exempted by the debtor, appreciates in value to the point it exceeds the statutory limit, the trustee will still hold title to such asset." *Id.* at 901. Implicit in this concluding remark is the assumption that if an asset appreciates, the holder of 100% interest in that asset (the debtor, as (now) exempt property) is not entitled to the benefit of such appreciation. As discussed in detail in Section III, the Court disagrees with that assumption.

## II. Use of the *Schwab* language accomplishes more than notice.

At the hearing on March 28, 2016, in response to the Court's statement that "... [*Schwab* ] says, the Trustee can object if the value of the asset exceeds the fair market value of the allowed exemption" Mr. Peake argued, "[w]hat I really think [*Schwab* ] says, is that if you put the Trustee on notice that that's what you're trying to do, the Trustee can object and then limit your exemption to the monetary amounts provided by Congress and the statute." (ECF No. 89 at 35). When asked about the meaning of the "100% of FMV" language that the Supreme Court recommended Reilly use in *Schwab,* Mr. Peake argued "that's just a notice mechanism." (ECF No. 89 at 9).

In *Williams v. Biesiada,* our own district court found that the *Schwab* language served an important notice purpose. In *Williams,* the debtor claimed a lawsuit as exempt property, but

indicated his interest in exempting "Full Fair Market Value" in the description of property column of Schedule C, not in the correct column entitled "value of claimed exemption." Because of this error, the court held that the trustee did not have sufficient notice, and therefore did not waive the estate's interest in the lawsuit by failing to object. 498 B.R. 746, 754 (S.D.Tex.2013). *Williams* falls squarely within both *Schwab* and the holding in this opinion.

The Supreme Court's statement in *Schwab* that a debtor using the "100% of FMV" language would "encourage the trustee to object promptly" suggests it serves *some* notice purpose, but inserting the "100% of FMV" language is not *solely* for notice purposes. The Court questions why the Supreme Court would recommend an approach that—if precisely followed by a debtor—would always be facially rejected. Surely the Supreme Court would not have adopted a practice that was fatally objectionable and flawed.

The "100 of FMV" language has an independent legal effect. The Supreme Court offered the "100% of FMV" language as an alternative to a debtor who did not wish to exempt a mere interest worth a specified dollar amount. *Compare Schwab* 560 U.S. at 792 ("where a debtor intends to exempt nothing more than an interest worth a specified dollar amount in an asset"), *with id.* at 792 ("where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself"). The Court contemplated a distinct type of exemption, identified by using the "100% of FMV" language, which both notifies the trustee of the debtor's intent, and defines the scope of the claimed exemption. The language is necessary to distinguish the *Schwab* exemption from "an interest worth a specified dollar amount in an asset." *Id.* at 792.

**\*6** Perhaps the "100% of FMV" exemption can be best conceptualized as an exemption of an equity interest.[3] Conversely, omitting the "100% of FMV" language results in removing from the estate a fixed monetary interest in the asset, much like a lien.

The Supreme Court in *Schwab* did not consider it a foregone conclusion that a trustee's objection to a debtor's attempt to effectuate a "100% of FMV" exemption of an interest valued within the statutory limit would automatically be sustained. Indeed, the Court contemplated the effect of the language if the objection was overruled: the debtor would be "entitled to exclude the full value of the asset." *Id.* at 793. The Court fully understood the exemptions offered by the Code, and it did not offer an alternative that would contravene § 522. It

Case: 22-60050, 07/07/2023, ID: 12750590, DktEntry: 34, Page 50 of 54

In re Ayobami, Not Reported in B.R. Rptr. (2016)
76 Collier Bankr.Cas.2d 1279

simply determined that in some cases, the value of 100% of the interest in an asset as of the petition date would be within the statutory limits. Under such circumstances, the debtor would be entitled to exempt the "full value of the asset."

The text of the Code underscores this result. As an example, § 522(d)(5) allows a debtor to exempt "[t]he debtor's aggregate *interest* in any property, not to exceed in *value* $1,225...." In § 522(d)(4) a debtor may exempt his "aggregate *interest,* not to exceed $1,550 in *value,* in jewelry...." 11 U.S.C. § 522 (emphasis added). These examples illustrate that it is the debtor's *interest* to which Code offers exemption. It is true that the value of the interest as of the petition date may not exceed the fixed dollar amount in the statute. But it is the interest, not the value, that is exempted.

### III. Post-petition appreciation in value of an exempt interest in an asset devolves to the debtor.

If a debtor exempts her interest[4] in an asset as 100% of FMV and values his interest within the applicable statutory limit, and that claimed exemption is unopposed (or all objections are overruled), 100% of the interest in the asset is *removed* from the estate. *Rousey v. Jacoway,* 544 U.S. 320, 325 (2005) ("To help the debtor obtain a fresh start, the Bankruptcy Code permits him to *withdraw from the estate* certain interests in property") (emphasis added). Bare title to the asset may remain with the estate, but 100% of the interest in that asset is withdrawn. If the asset then appreciates, who benefits from the appreciation? The Court finds it plain that it is the debtor who receives the benefit.

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from Schedule A/B | Check only one box for each exemption | |
| Brief description:<br>Rivergark West Sec 10, BLOCK 1, Lot 7<br>Line from Schedule A/B: 1.1 | $228,480.00 | ☐ $0.00<br>☒ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) (Claimed:<br>$0.00<br>100% of FMV) |
| Brief description:<br>3118 Thomas Paine Dr<br>Legal description:<br>Lexington Place Sec 1, Block 1, Lot 1<br>Line from Schedule A/B: 1.2 | $179,560.00 | ☐ $9,335.49<br>☒ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) (Claimed:<br>$9,335.49<br>100% of FMV) |

**\*7** As reflected in a portion of Ms. Ayobami's Schedule C published above, she claimed as exempt 100% of FMV of her interest with a value of $9,335.49 in real estate located at 3118 Thomas Paine Dr. The total value of the property is $179,560.00, but her Schedule D reflects a lien on the property for $170,224.51. The value of Ms. Ayobami's interest in the property is within the limit offered by § 522(d) (5). It is Mr. Peake's position that Ms. Ayobami exempted a fixed $9,335.49 interest in the property, and that any appreciation in value of the property should remain in, or be

returned to, the estate. (ECF No. 89 at 13) (responding to the Court's inquiry regarding the hypothetical exemption of a rare coin worth $5,000, Mr. Peake stated that "the $5,000 would leave [the estate], but any value over and above that, stays the property of the estate.").

In principle, Mr. Peake argues that any appreciation beyond the value of the exemption is non-exempt property, and therefore, property of the estate. (*Id.*).

*In re Gebhart* was the primary source authority used by the court in *Salazar* to conclude that the estate retains an interest in post-petition appreciation of an asset, even if a 100% of FMV interest with a value within the statutory limit in that asset was reclaimed by the debtor. *In re Salazar,* 449 B.R. at 901. *Gebhart* involved two chapter 7 cases consolidated for appeal. *In re Gebhart,* 621 F.3d 1206, 1209 (9th Cir.2010). The relevant case—because it involved federal exemptions —was filed by the Chappells. The Chappells exempted their equity in a homestead with a value as of the petition date of $21,511, well within the § 522(d)(1) limit. *Id.* After receiving a discharge, the holder of the Chappell's mortgage moved for relief from the stay in order to foreclose on the homestead because the Chappells had fallen into default. *Id.* In response, the trustee sought to sell the property, believing the value to have increased substantially since the petition was filed. The bankruptcy court held that the equity in the property had passed entirely out of the estate. *Id.* The trustee appealed and the bankruptcy appellate panel reversed, holding that postpetition appreciation in the homestead belonged to the estate. *Id.*

The Ninth Circuit, citing *Schwab,* held that the Chappells had only exempted a fixed monetary interest of $21,511 from the estate. *Id.* at 1210–11 ("Under [*Schwab* ], an exemption claimed under a dollar-value exemption statute is limited to the value claimed at filing.").

This Court does not question the validity of this conclusion. If a debtor fails to indicate his interest in exempting 100% of FMV *or*[5] fails to assign a dollar-value to his interest, he is not entitled to retain the benefit of any postpetition appreciation. The Chappells failed to follow the *Schwab* instructions (admittedly, their case pre-dated *Schwab* ); therefore, their legal position was no different than the debtors in *Orton* and *Schwab.*

**\*8** The Court cannot find, either in the Code or in *Schwab,* any language that mandates that the debtor's exempt interest

be a fixed dollar amount. The only mandate is that, as of the petition date, the value of the interest be within the relevant statutory limit. If a debtor employs *Schwab's* "100% of FMV" language, and assigns her interest a dollar-value as of the petition date, and the trustee either fails to object, or has his objection overruled, the debtor will have successfully reclaimed 100% of the interest in the asset from the estate.

The asset itself may not immediately leave the estate. Footnote 21 of *Schwab* makes clear that proposition is at least dubious. *Schwab* at 794 n. 21. However, in the Chapter 7 context, the footnote also makes clear that in most cases a Chapter 7 trustee will pass title in the asset to a debtor that has exempted a 100% interest in the asset. This is because, presumably, there would usually be no upside for the trustee in retaining bare title in the asset for the estate.[6]

The fundamental issue in dispute is whether post-petition appreciation of an asset, for which a debtor has exempted from the estate a 100% interest, is estate property. Mr. Peake argues that "any appreciation over [the exempted amount] ... comes back into the estate ... for the benefit of the creditors." (ECF No. 89 at 11). He further argues that if appreciation occurs, the debtor "ha[s] an absolute duty under [§] 1306 to contact [the trustee], it's no different than acquiring some other property." *Id.* at 10. It is certainly true that § 1306 reserves for the estate any property acquired by the debtor during the course of a Chapter 13 case. 11 U.S.C. § 1306(a). However, it is unclear that post-petition appreciation of an asset, all interest in which has been removed from the estate, constitutes after acquired property as contemplated by § 1306.

Section 541(a) dictates that "all legal or equitable interest of the debtor in property as of the commencement of the case" is property of the bankruptcy estate. Many courts relying on § 541(a)(6) have held that post-petition appreciation in estate property belongs to the estate. *In re Goins,* 539 B.R. 510, 516 (Bankr.E.D.Va.2015); *In re Potter,* 228 B.R. 422, 424 (8th Cir. B.A.P.1999); *In re Reed,* 940 F.2d 1317, 1323 (9th Cir.1991). This result is prudent. After all, the estate has "all legal or equitable interest" in the debtor's property.[7] It follows then that the estate should benefit from any post-petition appreciation of that property.

*\*9* But what of the debtor that exempts from the estate a 100% interest in the asset? Does it follow then that post-petition appreciation of the asset, of which the estate only holds bare legal title—and no beneficial title, should devolve

to the estate? Certainly not. Post-petition appreciation must devolve to the holder of the interest.

**IV. A path forward**

The Court adopts a simple approach. While potentially burdensome with respect to case administration, this approach gives effect to the language of *Schwab* and its implications on 11 U.S.C § 522. Significantly, this approach is similar to the approach adopted by another Texas bankruptcy court. *See In re Moore,* 422 B.R. 865 (Bankr.N.D.Tex.2010).

A debtor must do two things to exempt a 100% interest in an asset from the estate. First, she must check the box in the third column of Schedule C that corresponds with the text "100% of fair market value, up to any applicable statutory limit." Second, she must assign a dollar value to her interest. Ms. Ayobami accomplished the second requirement by indicating the value of her interest in the assets in the fourth column of Schedule C.

The trustee may object to a debtor's claimed exemption. If the trustee lodges an objection, the court will hold an evidentiary hearing to determine the value of the claimed exemption of a 100% interest in the asset. Perhaps because the debtor's sworn schedules attest to the value of the interest, Fed. R. Bankr.P. 4003(c) imposes the burden of proof on the trustee to challenge the debtor's value. If the objection is overruled, the debtor's interest will be removed from the estate, and the estate retains only bare title to the asset. Any postpetition appreciation of the asset will go to the debtor. If the objection is sustained, the debtor will be required to amend his exemptions to comply with § 522. *See In re Moore,* 442 B.R. at 868.

**A Caution**

Mr. Peake, acting with his due diligence, is concerned that estates could be deprived of undervalued assets. The Court recognizes the administrative burden on trustees that is created by the option given in *Schwab,* but an administrative burden imposed by statute may not be avoided merely because of its burdensome nature.

Nevertheless, in 2008, the Federal Rules of Bankruptcy Procedure were amended to add a provision dealing with fraudulently claimed exemptions. The general rule for the filing of an objection to exemptions requires objections to

In re Ayobami, Not Reported in B.R. Rptr. (2016)
76 Collier Bankr.Cas.2d 1279

be filed within 30 days after the conclusion of the § 341(a) meeting of creditors. Fed. R. Bankr.P. 4003(a). The 2008 Amendments give the trustee *up to one year after the case is closed* if the debtor fraudulently claimed an exemption. Fed. R. Bankr.P. 4003(b)(2).

Of course, it is not fraudulent to hold an asset that increases in value. Conversely, it likely would be fraudulent to knowingly misrepresent the fair value of an asset in order to enable an interest in that asset to be claimed as exempt. The Rules adequately provide for the integrity of the bankruptcy exemption scheme.

**Conclusion**

The Court will issue an order consistent with this Supplemental Memorandum Opinion. Except to the extent of any conflict, the Court's March 1, 2016 Memorandum Opinion remains effective.

**All Citations**

Not Reported in B.R. Rptr., 2016 WL 3854052, 76 Collier Bankr.Cas.2d 1279

Footnotes

1       A Chapter 7 trustee, for example, may elect to utilize his legal title to sell the asset in order to pay debt that is secured by the asset. With exceptions not relevant here, a debtor's exemption of an interest in an asset is subject to the rights of secured creditors. Although a Chapter 7 trustee might ordinarily abandon an asset where the value is held either by the secured creditor (via a lien) or the debtor (via an exemption), the Court imagines a scenario with cross-collateralized debt where repayment of the cross-collateralized lien would inure to the estate's benefit by allowing the disposition of on an asset which is not the subject of an exemption claim. In a chapter 13 context, this situation would not arise. The debtor is burdened with an obligation to pay holders of claims at least the amount that they would receive in a chapter 7 case. 11 U.S.C. § 1325(a)(4).

2       To the extent that this distinction does not matter, the Court rejects *Massey*.

3       The question of whether a debtor may exempt an "equity" interest of less than 100% in lieu of a monetary interest in the *value* of the asset is not before the Court. Nevertheless, consider the exemption possibilities for a rare coin owned by the debtor with a fair market value of $10,000.00. Theoretically, under § 522(d)(5) a debtor could exempt a 10% interest in the coin—and thus exempt an interest with a fair market value of $1,000.00. Alternatively, a debtor could exempt a $1,000.00 monetary interest in the *value* of the coin. As of the date of exemption, they are functionally identical, but if the coin changes in value post-exemption, the debtor's equity interest in the coin— which was removed from the estate—is subject to fluctuations in the rare coin market. Fluctuation in value of the debtor's equity interest can work to the debtor's benefit or detriment. If the coin depreciates, the value of the debtor's equity interest depreciates (and he would have squandered valuable exemption space that could have been used for another asset). Conversely, if the coin appreciates, the value of the debtor's equity interest appreciates. Because the debtor's equity interest was removed from the estate, any appreciation in value of that interest is similarly removed from the estate. Had the debtor opted only to exempt a $1,000.00 monetary interest in the asset, the value of his exemption would be unaffected by post-exemption value fluctuations.

4       Of course, some state statutes (e.g., Tex. Prop.Code § 41.001) allow for an exemption of the asset itself. This opinion does not address the effect of a state exemption statute that provides for the exemption of an asset.

5       It is critical that a debtor both, (1) indicate his intent to exempt 100% of FMV, and (2) assign a dollar-value to the interest exempted. Part one of this procedure is necessary to comply with *Schwab* if the debtor wants to exempt 100% of the interest in an asset. Part two of this procedure ensures a trustee has sufficient notice of the value the debtor is claiming exempt as of the petition date so he is better positioned to object.

6       In Chapter 13, the principle is the same though the process is slightly different. Section 1306(b) states that "[e]xcept as provided in a confirmed plan or order confirming a plan, *the debtor* shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b) (emphasis added). In a Chapter 13 case, if there is no upside in retaining bare title to an

asset for the estate, it is the debtor, as the debtor in possession of estate property, who may pass the remaining bare legal title in the asset to himself.

7    While it is universally understood that the estate obtains legal title to the debtor's property under § 541, it is not obvious from the text of the Code that the estate obtains anything more than all interests, legal or equitable, in the debtor's property. *Compare Schwab,* 560 U.S. at 794 n.21, *with* 11 U.S.C. § 541(a)(1). Importantly, it is also the debtor's interest that is available for exemption under the limited-exemption statutes of § 522. Owning a 100% interest in an asset and owning the asset itself might be a distinction without a difference.

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on July 7, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

     I certify that all parties of record to this appeal either are registered CM/ECF users, or have registered for electronic notice, or have consented in writing to electronic service, and that service will be accomplished through the CM/ECF system.

     /s/ Darren M. Digiacinto