**No. 22-60050**

_____

**IN THE UNITED STATES COURT OFAPPEALS
FOR THE NINTH CIRCUIT**

_____

IN RE: MONTE L. MASINGALE;
ROSANA D. MASINGALE,
*Debtors*.

_____

JOHN D. MUNDING, CHAPTER 7
TRUSTEE; STATE OF WASHINGTON,
*Appellants*,
v.
ROSANA D. MASINGALE,
*Appellee*.

On Appeal from the United States
Bankruptcy Appellate Panel for the Ninth
Circuit
No. 22-1016
The Honorable Robert J. Faris, Julia W.
Brand, and William J. Lafferty III

_____

**AMICUS CURIAE BRIEF OF THE
NATIONAL CONSUMER BANKRUPTCY
RIGHTS CENTER IN SUPPORT OF
APPELLEE**

_____

On Brief:
Allan L. Gropper

Norma L. Hammes
Gold and Hammes, Attorneys
2570 N. First St, Suite 200
San Jose CA 95131
(408) 297-8750
Email: office@goldandhammes.com
Attorney for the
National Consumer Bankruptcy
Rights Center

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Munding et al v. Masingale,* No. 22-60050.

Pursuant to Fed. R. App. P. 26.1, Amicus Curiae, the National Consumer Bankruptcy Rights Center, makes the following disclosure:

1) Is party/amicus a subsidiary or affiliate of a publicly owned corporation?  If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party.  **NO**

2) Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list below the identity of the corporation and the nature of the financial interest.  **NO**

This day of July 14, 2023.

*s/ Norma L. Hammes*
Norma L. Hammes
Attorney for Amicus Curiae

i

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT……………....…i

TABLE OF AUTHORITIES………………………………………………iii

INTEREST OF AMICUS CURIAE……………………………….……….1

STATEMENT UNDER FED. R. APP. P. 29(a)(4)(E)…………...…………3

SUMMARY OF ARGUMENT………………….…………………….3

ARGUMENT………………….………………………………………….3

I.      The BAP Order Properly Effectuates the Policy of Providing Certainty and Predictability in Connection with the Exemption of Property in Bankruptcy Cases…………….………………………………………….……..3

II.     The BAP Correctly Applied the Supreme Court's Taylor Decision in Holding that an Exemption Claim is Valid Even If the Property Value is Ultimately Larger Than What the Relevant Legislation Allows……………8

III.    The BAP Correctly Held that the Masingales' Exemption of "100% of FMV" Meant What It Said and Exempted 100% of Fair Market Value as of the Date of Sale…………………………………………………………….10

CONCLUSION…………………..………………………………...19

CERTIFICATE OF COMPLIANCE………………….....……………….20

CERTIFICATE OF SERVICE………………………………………….21

# TABLE OF AUTHORITIES

**Federal Cases**                                                 **Page(s)**

*Bell v. Bell* (*In re Bell*),
225 F.3d 203 (2d Cir. 2000) .................................................................... 4

*Evans v. McCallister* (*In re Evans*),
69 F.4th 1101 (9th Cir. 2023) ................................................................. 1

*Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*,
143 S. Ct. 1689 (2023) ............................................................................. 1

*Gebhart v. Gaughan* (*In re Gebhart*),
621 F.3d 1206 (9th Cir. 2010) ...................................................... 7, 15, 14

*Klein v. Chappell* (*In re Chappell*),
373 B.R. 73 (2007) ................................................................................ 14

*Law v. Siegel*,
571 U.S. 415, 134 S. Ct. 1188 (2014) .................................................... 13

*Masingale v. Munding* (*In re Masingale*),
644 B.R. 530 (B.A.P. 9th Cir. 2022) ................ 7, 11, 8, 17, 917, 11, 12, 9

*Numa Corp. v. Diven*,
2022 U.S. App. LEXIS 32224, 2022 WL 17102361 (9th Cir. 2022) ...... 1

*In re Oliver*,
649 B.R. 206 (Bankr. E.D. Cal. 2023) .................................................. 10

*Owen v. Owen*,
500 U.S. 305 (1991) .......................................................................... 4, 11

*Peake v. Ayobami* (*In re Ayobami*),
879 F.3d 152 (5th Cir. 2018) ................................................................. 14

*In re Richards*,
644 B.R. 777 (B.A.P. 6th Cir. 2022) ....................................................... 4

*Schwab v. Reilly*,
560 U.S. 770 (2010) …………………………………………….4, 13, 16

iii

*Taylor v. Freeland & Kronz* ,
   503 U.S. 638 (1992) ............................................................. 8, 10

*United States v. Augustine*,
   712 F.3d 1290 (9th Cir. 2013) ............................................. 12

*Wilson v. Rigby*,
   909 F.3d 306 (9th Cir. 2018) ............................................. 7, 17

**Federal Statutes**

11 U.S.C. § 522 .................................................................... 16, 10

**State Statutes**

Cal. Civ. Proc. Code § 703.140 (Deering) .................................. 6

Wash. Rev. Code Ann. § 6.13.070 ............................................. 6

**Rules**

Fed. R. App. P. 26.1 ............................................................... i

Fed. R. Bankr. P. 1019 ......................................................... 9

Fed. R. Bankr. P. 4003 ......................................................... 4, 10

Fed. R. Bankr. P. 9006 ......................................................... 4

**Other**

9 Collier on Bankruptcy ¶4003.03 (Richard Levin and Henry J. Sommer,
eds., 16th ed.). ……………………………………….……………………5, 14

iv

## INTEREST OF AMICUS CURIAE

The National Consumer Bankruptcy Rights Center (NCBRC) is a non-profit organization dedicated to protecting the integrity of the bankruptcy system and preserving the rights of consumer bankruptcy debtors. To those ends it provides assistance to consumer debtors and their counsel in cases likely to impact consumer bankruptcy law importantly. Among other things, it submits amicus curiae briefs when in its view resolution of a particular case may affect consumer debtors throughout the country, so that the larger legal effects of courts' decisions will not depend solely on the parties directly involved in the case. The Center also strives to influence the national conversation on bankruptcy laws and debtors' rights by increasing public awareness of and media attention to the important issues involved in bankruptcy proceedings.

NCBRC has filed *amicus curiae* briefs in numerous cases seeking to protect the rights of consumer bankruptcy debtors. *See, e.g., Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 143 S. Ct. 1689 (2023); *Evans v. McCallister* (*In re Evans*), 69 F.4th 1101 (9th Cir. 2023); *Numa Corp. v. Diven*, 2022 U.S. App. LEXIS 32224, 2022 WL 17102361 (9th Cir. 2022).

The result in the case at bar will affect the administration of many consumer cases in this Circuit. If the Bankruptcy Appellate Panel ("BAP") decision is not affirmed, consumer bankruptcy attorneys representing their clients in good faith will face an impossible situation – can they follow the direction of the Supreme Court when claiming an exemption on their clients' behalf or must they follow Appellants and deem Supreme Court authority on point "dicta" or "gratuitous dicta" that can and should be circumvented or ignored. Unless the BAP decision is affirmed, many bankruptcy debtors will find it impossible to know whether their property is fully exempt and not subject to sale by a trustee. The need for clarity is clear, and in our view the answer is straightforward and compelling: the BAP correctly held in this case that (1) in the absence of an objection, a claim of exemption stands; and (2) a claim of an exemption in the amount of 100% of FMV means what it says and should be enforced even if the result might not have been anticipated by creditors – or by the debtor and the debtor's counsel.

All parties except John D. Munding, Chapter 7 Trustee, have consented to the filing of this amicus brief by NCBRC. NCBRC is filing a Motion for Leave To File Amicus Brief contemporaneously with this brief.

**STATEMENT UNDER FED. R. APP. P. 29(a)(4)(E)**

No party's counsel authored this amicus curiae brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person, other than the amicus curiae, its members, or its counsel, contributed money that was intended to fund preparing or submitting this brief.

**SUMMARY OF ARGUMENT**

The order of the Bankruptcy Appellate Panel should be affirmed. It follows to the letter applicable authority in the Supreme Court and this Court, resulting in clear rules that consumer bankruptcy counsel – as well as creditors, trustees and their counsel -- can follow. Reversal would result in a Ninth Circuit rule of dubious provenance that elides governing authority and fails to provide sound guidance and certainty to all parties.

**ARGUMENT**

I.   **The BAP Order Properly Effectuates the Policy of Providing Certainty and Predictability in Connection with the Exemption of Property in Bankruptcy Cases.**

A debtor's right to claim that certain property is exempt from creditors' claims is fundamental to the fair administration of the bankruptcy laws. As the Supreme Court stated in its most recent decision on exemption procedure,

3

*Schwab v. Reilly,* 560 U.S. 770 (2010), "We agree that 'exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy policy of a fresh start,'" quoting from the debtor's brief in that case. *Id.* at 791. It is well accepted that under Federal law exemptions are liberally construed in favor of debtors. *In re Richards*, 644 B.R. 777, 783 (B.A.P. 6th Cir. 2022).

It is equally fundamental that exemptions must be determined at the very beginning of a bankruptcy case. An exemption, unless objected to, is self-executing and effectively removes property from the estate and revests it in the debtor. *See Owen v. Owen*, 500 U.S. 305, 308 (1991); *see also Bell v. Bell* (*In re Bell*), 225 F.3d 203, 215-16 (2d Cir. 2000). The debtor thereafter has certainty as to the right to deal with the property as a personal asset free from any danger, in a chapter 7 case, that it will be liquidated by the trustee. Accordingly, exemptions must be claimed on the debtor's schedules filed at the outset of the case, and Fed. R. Bankr. P. 4003 has a very short period for objecting to a claim of exemption -- which period cannot be extended even for excusable neglect under Fed. R. Bankr. P. 9006. If the Bankruptcy Rules provided otherwise, debtors would be faced with an impossible dilemma. Assume that a debtor owns a car that the debtor could exempt in full at the outset of the case. Should the debtor fund a major repair, at a time of financial stress, without knowing whether the car will be

4

found fully exempt? If the exemption cannot be finalized at the time the objection deadline expires, there could be an increase in used car values, as occurred recently due to supply chain problems, that could bring the value of the vehicle above the applicable maximum and deprive the debtor of the benefit of the repair expenditure.

As another example, assume that a debtor, as in this case, owns real property as a homestead. If a claim of exemption were not determined early in the case, the debtor might continue to make mortgage payments on the property for years but without any benefit to the debtor's fresh start, even though creditors' claims may already have been discharged. The leading text on bankruptcy explains the reasons why the Bankruptcy Rules allow only a short time for objecting to exemption claims, as follows:

> Absent an early date by which the debtor can know that a claim of exemption can no longer be contested, the debtor is precluded from transferring or even modifying such property…. If the property claimed as exempt is real estate subject to a mortgage, the debtor should be able to know whether any mortgage payments made will benefit the debtor, rather than the bankruptcy estate. If the asset is a cause of action, the debtor should know whether the trustee will assert any claim to the cause of action and seek to control litigation of the case. In a case in which there are other assets that have not been claimed as exempt and that are being administered by the trustee, this uncertainty could last for years unless there is an enforceable deadline for objections to exemptions.

9 Collier on Bankruptcy ¶4003.03 (Richard Levin and Henry J. Sommer, eds., 16th ed.).

We note that recent amendments to the legislation of the State of Washington, where the instant case arose, as well as the State of California provide that appreciation in value of exempt property during a bankruptcy case inures to the benefit of the debtor, not the estate.[1]  These statutes are not directly at issue on this appeal, as the debtors in this case claimed the

---

[1] **Wash. Rev. Code Ann. § 6.13.070. Homestead exempt from execution, when—Presumed valid**
- **(1)** Except as provided in RCW 6.13.080, the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in RCW 6.13.030.
- **(2)** In a bankruptcy case, the debtor's exemption shall be determined on the date the bankruptcy petition is filed. If the value of the debtor's interest in homestead property on the petition date is less than or equal to the amount that can be exempted under RCW 6.13.030, then the debtor's entire interest in the property, including the debtor's right to possession and interests of no monetary value, is exempt.
Any **appreciation** in the value of the debtor's exempt interest in the property during the bankruptcy case is also exempt, even if in excess of the amounts in RCW 6.13.030(1).

**Cal. Civ. Proc. Code § 703.140. Election of exemptions if bankruptcy petition is filed**
- **(c)** In a case under Title 11 of the United States Code, the value of the property claimed as exempt and the debtor's exemptions provided by this chapter with respect to such property shall be determined as of the date the bankruptcy petition is filed. In a case where the debtor's equity in a residence is less than or equal to the amount of the debtor's allowed homestead exemption as of the date the bankruptcy petition is filed, any **appreciation** in the value of the debtor's interest in the property during the pendency of the case is exempt.

Federal exemptions.[2]  However, they also implicate the importance of an
early determination as to whether property is fully exempt, as appreciation
on exempt property is also exempt. The debtor should be able to obtain that
determination promptly so that it is clear whether the appreciation of the
property will be exempt.

The BAP order on appeal[3] carries out the statutory policy of requiring
an early exemption claim, an early objection, and an early judicial
determination.  As discussed below, to carry out the policy of the
Bankruptcy Code regarding exemptions and do so fairly to all parties, the
exemption claim must be clear so that parties will be on notice of the need to

---

[2]  Nevertheless, these State amendments may be helpful in clarifying the
developing public policies involved.  For example, *Gebhart v. Gaughan* (*In
re Gebhart*), 621 F.3d 1206 (9th Cir. 2010), which is discussed extensively
below, relied on both State and Federal precedent that, at the time of that
decision, determined that appreciation in value of an asset during a
bankruptcy case inures to benefit of the estate. 621 F.3d at 1211. State public
policy, at least in the Ninth Circuit, has changed appreciably.  Notably, the
preamble to the Washington State legislation quoted above states that one of
its purposes was to "address" the case of *Wilson v. Rigby*, 909 F.3d 306 (9th
Cir. 2018), a case from Washington State finding that rights to post-petition
appreciation in a homestead under Washington law inured to the benefit of
the estate, suggesting that that had never been the legislature's intent.  See
Final Bill Report (5408-S.E SBR FBR 21 (wa.gov) at
https://lawfilesext.leg.wa.gov/biennium/2021-
22/Pdf/Bill%20Reports/Senate/5408-
S.E%20SBR%20FBR%2021.pdf?q=20230711185014).
[3]  *Masingale v. Munding* (*In re Masingale*), 644 B.R. 530 (B.A.P. 9th Cir.
2022).

object.  Equally, as the Supreme Court held in *Taylor,* if there is adequate notice and a failure to object, an exemption claim will stand even if later events prove it to be outside statutory authority.

## II.    The BAP Correctly Applied the Supreme Court's Taylor Decision in Holding that an Exemption Claim is Valid Even If the Property Value is Ultimately Larger Than What the Relevant Legislation Allows.

The BAP order below correctly identified the two issues in this case and the two decisions of the Supreme Court that are controlling.  The Court posed the first issue as follows: "whether the absence of an objection means that the Masingales' exemption claim is valid even though it is larger than what the law allows."  *Id.* at 538.  The BAP easily answered this question in the affirmative, stating, "Section 522(*l*) and the Supreme Court's decision in *Taylor* [*Taylor v. Freeland & Kronz, 50*3 U.S. 638 (1992)] foreclose any debate on the first question."  *Id.*

Appellants barely attempt to distinguish *Taylor,* arguing mainly that "there was no Chapter 7 trustee appointed during the 30-day period that could have objected to the *property* claimed as exempt."  Appellants' Br. at 24.  It is true that there was no trustee during that 30-day period.  This case was no different from any other chapter 11 case filed by an individual (other than under recently-enacted subchapter V of chapter 11), in which there is initially no trustee and the creditors are the only parties that can object to

8

exemptions. In any event, the lack of a trustee is quite irrelevant to the import of *Taylor*. Moreover, as the BAP observed, "If the State [of Washington, one of the Appellants here and a party from the commencement of the case] disagreed with the exemption claim, or was not sure how much the Masingales were claiming, the State should have objected and allowed the bankruptcy court to resolve the matter." *Masingale*, 644 B.R. at 541-42.

It is not the Masingales' responsibility that the subsequently appointed chapter 7 trustee did not have an extended time period for filing an objection to their exemption claim. That was the consequence of a 2010 amendment to the Bankruptcy Rules. The Masingales' chapter 11 case was converted to chapter 7 more than a year after plan confirmation. Under Fed. R. Bankr. P. 1019(2)(B)(i), as the BAP stated, "parties in interest are not afforded a new time period to object to exemptions when cases are converted from chapter 11 to chapter 7 more than a year after plan confirmation." *Masingale*, 644 B.R. at 539. The reason for the one-year limitation is not explained in the Advisory Committee note regarding the 2010 Amendment but is obviously reflective of the principle that a claim of exemption should be determined at an early stage of the case. As discussed above, unless a claim of exemption is objected to, it is self-executing, removes property from the estate and revests it in the debtor. It is

9

reasonable, therefore, to limit a right that might in some cases effectively "revest" property in the estate contrary to the principles of finality and certainty that are a cornerstone of bankruptcy policy. As the Supreme Court said in *Taylor,* "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor*, 503 U.S. at 644.

In any event, the trustee represents creditors who were parties in interest at the commencement of this proceeding and who could have objected. They did not, and the BAP properly rejected Appellants' effort to circumvent *Taylor* and create an additional period for filing an objection to a claim of exemption.[4]

### III. The BAP Correctly Held that the Masingales' Exemption of "100% of FMV" Meant What It Said and Exempted 100% of Fair Market Value as of the Date of Sale.

After rejecting Appellants' effort to avoid the Supreme Court's decision in *Taylor,* the BAP then considered the second question before it – "whether the Masingales claimed as exempt the full fair market value of the property at the time of the sale, rather than the value on the petition date."

---

[4] There is a safety valve under Fed. R. Bankr. P. 4003(b)(3), where the Bankruptcy Rules created a very specific longer period for objecting to exemptions where wrongdoing of the type described in 11 U.S.C. § 522(q) is involved. See *In re Oliver,* 649 B.R. 206 (Bankr. E.D. Cal. 2023). Where a longer period for filing objections to exemptions was deemed appropriate, the Supreme Court knew how to create one.

*Masingale*, 644 B.R. at 538. It answered this question in the affirmative, relying on the Supreme Court's decision in *Schwab v. Reilly,* cited above. There, the Supreme Court instructed that a party claiming an exemption should "make the scope of the exemption clear, for example, by listing the exemption value as 'full fair market value (FMV)' or '100% of FMV.'" *Id.* at 540. The BAP found that "The Masingales followed the Supreme Court's suggestion to the letter", *Masingale*, 644 B.R. at 540*,* and successfully claimed an exemption for 100% of fair market value. Once they did so, under the Supreme Court's decision in *Owen*, 500 U.S. 305, the entire property claimed as exempt left the bankruptcy estate.

As a result of their claim for an exemption of "100% of FMV," as the BAP also correctly concluded, the exemption claimed by the Masingales was for the fair market value of the property regardless of appreciation after the petition date, and the lack of a timely objection foreclosed a later attempt to limit the claim. The property had been withdrawn from the estate when the exemption was finalized. The BAP found that the "bankruptcy court [whose decision it was reviewing] had improperly ignored *Schwab* when it stated that the "'100% of FMV' discussion was dicta and that courts have rejected subsequent attempts by debtors to claim '100% of FMV.'" The BAP disagreed, stating, "We do not agree that we can so easily reject

11

language that the Supreme Court has approved for this very situation."
*Masingale*, 644 B.R. at 441 n.6.

It must be emphasized that the critical distinction between this case
and the earlier decisions of this Court relied upon by Appellants is that in
none of those earlier cases did the debtors make a claim for 100% of fair
market value, the wording suggested by the Supreme Court. Just as the BAP
rejected the Bankruptcy Court's refusal to follow Supreme Court authority,
this Court should similarly reject Appellants' effort to sidestep *Schwab* with
precisely the same argument -- that *Schwab's* language is dicta (although
Appellants call *Schwab's* language not just dicta but "gratuitous dicta.")
(App. Br. at 27.) Even if the language were dicta, as this Court said in
*United States v. Augustine*, 712 F.3d 1290, 1295 (9th Cir. 2013) "This
statement is dictum, but considered Supreme Court dictum is special. 'We
do not treat considered dicta from the Supreme Court lightly. Rather, we
accord it appropriate deference.' *United States v. Montero-Camargo*, 208
F.3d 1122, 1132 n.17 (9th Cir. 2000); *see also Fields*, 699 F.3d at 522
(treating "carefully considered" dictum as "authoritative")."

12

The language in *Schwab* about 100% of fair market value is part of the reasoning underlying the opinion.[5] Direction from the Supreme Court must indeed be reckoned with, and a finding by this Court that *Schwab* should be ignored would create a conundrum for every consumer bankruptcy attorney in the Ninth Circuit and perhaps the nation -- can they properly follow the advice of the Supreme Court regarding a claim of exemption?[6] At least in the Ninth Circuit, consumer bankruptcy attorneys would also be unable to follow the leading bankruptcy treatise, which advises,

> In Schwab, the [Supreme] Court also helpfully told debtors and their counsel how they can indicate the intent to exempt the debtor's entire interest in a particular asset. The debtor can make absolutely clear the debtor's intent to exempt the entire asset by listing the exempt value as 'full fair market value (FMV)' or '100% of FMV…. By showing

---

[5] Far from being gratuitous dicta, as noted in the footnote accompanying it, the language in the majority opinion was a direct response to the dissenting opinion, which argued that by "permitting trustees to challenge a debtor's valuation of exempted property anytime before the administrative closing of the bankruptcy estate, the Court casts a cloud of uncertainty over the debtor's use of assets reclaimed in full." *Schwab*, 560 U.S. at 804-05 (Justice Ginsburg, dissenting).

[6] Appellants also assert that *Schwab* was overruled by the "subsequent holding in *Law v. Siegel*, 571 U.S. 415, 134 S. Ct. 1188 (2014). Appellants argue that in *Law v. Siegel* "even the Supreme Court recognizes it cannot create [a] new homestead exemption statute or exceptions to the existing statutes." (Munding App. Brief at 27.) However, their argument stands the Supreme Court authority they cite on its head. As the BAP decision recognizes, the instant case does not create a new exemption or an exception to the existing statute. It follows *Law v. Siegel* by strictly enforcing the Bankruptcy Code as written.

> debtors how to express their intent to exempt the debtor's entire
> interest in an asset, the Court effectively rejected the argument often
> made by trustees that debtors cannot exempt the debtor's entire
> interest in particular property if there is a statutory dollar limit on such
> exemption. The Court specifically provided a way to do exactly that,
> which becomes final if a timely objection is not made.

9 Collier on Bankruptcy ¶ 4003.02 (Richard Levin and Henry J. Sommer,

eds., 16th ed.).

We also direct the Court's attention to the Fifth Circuit's decision in

*Peake v. Ayobami* (*In re Ayobami*), 879 F.3d 152 (5th Cir. 2018). There the

Circuit Court affirmed a bankruptcy court decision that allowed the debtor to

exempt the full value of a homestead using somewhat different language

"100% of FMV up to any applicable statutory limit," along with a valuation

of the property in the schedules. *Ayobami* is apparently the only other Circuit

case post-*Schwab* that discusses the language, "100% of FMV," and it

certainly does not disregard the Supreme Court's language as "dicta" or

"gratuitous dicta."

In Appellants' brief to this Court, they make several related arguments

that the BAP properly rejected. First, Appellants contend that this Court's

decision in *In re Gebhart,* 621 F.3d 1206 (9th Cir. 2010), and the BAP's own

decision in *Klein v. Chappell* (*In re Chappell*), 373 B.R. 73 (2007), are

dispositive in that the Federal homestead exemption (claimed by the

Masingales) is a "capped exemption" and appreciation in value inures to the
benefit of the estate rather than the debtor. The BAP decision discusses both
cases at length and concludes that the debtors in *Gebhart* and *Chappell* did
not "remove the entire asset from the estate" because the exemptions
claimed were limited to specific dollar amounts.[7] It easily distinguished the
case before it:

> "In short, *Chappell* and *Gebhart* stand for the uncontroversial
> proposition that a debtor claiming a dollar-figure exemption within
> the statutory limits is not entitled to recover anything more than the
> claimed amount. This is exactly consistent with *Schwab,* and it does
> not address a case in which the debtor exempts '100% of FMV.'"
> *Masingale*, 644 B.R. at 542.

As noted above, the distinction between claiming a "dollar-figure
exemption within the statutory limits" and a claim of "100% of FMV" is a
critical one. Appellants denigrate the language at issue but miss the whole
point of *Schwab, Gebhart, Chappell* and similar decisions.[8] When a specific
dollar amount is claimed and that amount is within the statutory limits,
debtors do not "manifest an intention" to claim any more, and creditors and
trustees are not alerted to the need to file an objection. If "100% of FMV"

---

[7] Indeed, *Gebhart* specifically noted that it was not dealing with a claim "for
the full fair market value" of the property claimed as exempt. *Gebhart*, 621
F.3d at 1210 n.4.

[8] *Chappell* is also distinguishable in that, from the outset, the debtor
conceded that there was nonexempt equity, so that any appreciation would
merely increase the nonexempt equity.

is claimed, a party in interest would recognize the need to file an objection to any exemption claim it believes to be over the applicable cap. As the Supreme Court put it in *Schwab*, 560 U.S. at 792-93, "Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV." Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits." In this case, as the BAP noted, the State of Washington could have protected its rights by filing an objection, but it did not.[9]

Appellants also make much of an argument that an exemption only applies to a debtor's aggregate interest in real property and does not remove the property itself from the estate. App. Br. at 19, quoting from 11 U.S.C. § 522(d)(1). The BAP correctly held that the Masingales' claim of 100% of FMV "claimed the entire value of the property as exempt and did not specify

---

[9] We do not intend this as a criticism of the State. In the instant case it does not appear that it could have been reasonably anticipated by either the State or the Masingales that the case would drag on so long that the value of the home would so greatly appreciate over time.

16

a dollar amount. *Taylor* holds that parties may not challenge that claim at this time." *Masingale*, 644 B.R. at 544.

The BAP also disposed of a further argument, which Appellants make again, that under the "snapshot rule" post-petition appreciation "enures [sic] solely to the benefit of the bankruptcy estate." App. Br at 29. The BAP decision recognizes that under the snapshot rule, it is "well settled that postpetition appreciation of estate property inures to the benefit of the bankruptcy estate," citing *Wilson v. Rigby,* 909 F.3d 306, 309 (9th Cir. 2018). But as the BAP correctly concluded, "these decisions do not squarely address the question before us. The snapshot rule fixes the point in time that defines the exemptions that a debtor is entitled to take. It says nothing about what happens when a debtor claims an exemption in postpetition appreciation to which the debtor is **not entitled** and no one timely objects." 644 B.R. at 543 (emphasis in original). It held, citing *Taylor,* "in order to get the benefit of the snapshot rule, a trustee must object to an exemption claim that contradicts that rule." *Id.* [10]

_____

[10] The BAP again correctly found that "*Gebhart* is not to the contrary", quoting this Court's statement there that "'what is removed from the estate is an "interest" in the property equal to the value of the exemption claimed at filing.'" 644 B.R. at 544, quoting from *Gebhart,* 621 F.3d at 1210. It distinguished *Gebhart* by stating that the debtor there claimed a specific amount as an exemption and that by contrast, "the Masingales claimed the entire value of the property as exempt and did not specify a dollar amount.

Finally, the BAP easily rejected the Appellants' claim that "judicial estoppel prevents Mrs. Masingale from deviating from her previous representation that the homestead exemption was limited to $18,163." It said simply, "We see no such representation; when asked to claim exemptions, the Masingales always claimed that the entire value of the property was exempt". 644 B.R. at 542. Appellants continue to assert that in their chapter 11 plan and disclosure statement the "Masingales affirmed that the value of their claimed homestead was capped". Appellants' Br. at 29. However, they merely cite to a few pages of the record and do not offer any specifics to justify the application of judicial estoppel principles here.

Just as the Masingales were not barred by principles of judicial estoppel, we suggest that they were not responsible for wrongdoing of any kind.

We know of no indication that the Masingales could have foreseen that their bankruptcy proceedings would drag on for so many years that the value of their homestead would exceed their State's statutory limit after payment of the large mortgage on the property.

---

*Taylor* holds that parties may not challenge that claim at this time." *Masingale*, 644 B.R. at 544.

18

In any event, we suggest the principle espoused in the BAP decision is important – Supreme Court authority can be relied on – and can be relied on by consumer bankruptcy lawyers. As noted above, if the BAP decision is reversed, every consumer bankruptcy attorney will be in a quandary whether the Supreme Court authority can be followed in the Ninth Circuit and the law of exemptions in bankruptcy will be anything but plain and easily followed at an early stage of the bankruptcy case.

## CONCLUSION

The order of the Bankruptcy Appellate Panel should be affirmed.

Respectfully submitted,

Norma L. Hammes, Esq.
Gold and Hammes, Attorneys
2570 N. First St, Suite 200
San Jose CA 95131
(408) 297-8750
Email: office@goldandhammes.com
Attorney for the
National Consumer Bankruptcy Rights
Center.

19

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

### 9th Cir. Case Number(s) 22-60050

I am the attorney or self-represented party.

**This brief contains 4,605 words,** including zero (0) words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Norma M. Hammes          **Date July 14, 2023**

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 14, 2023.  All participants that are registered as CM/ECF users will receive service via appellate CM/ECF system.


_____*s/ Norma M. Hammes*_____
Norma M. Hammes
Attorney for Amici Curiae